(No. 42464.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EDWARD MARIGNY, Appellant.

*Opinion filed March 30, 1972.—Rehearing denied May 25, 1972.*

JAMES V. DeMARCO, of WINSTON, STRAWN, SMITH & PATTERSON, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and THEMIS N. KARNEZIS, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant was found guilty of the sale of heroin (Ill.Rev.Stat. 1965, ch. 38, par. 22—3), by a jury in the circuit court of Cook County, and was sentenced to the penitentiary for a term of 10 to 14 years. He appeals contending: (1) the trial court erred in denying his motion to suppress evidence; (2) he was not proved guilty beyond a reasonable doubt; and (3) he was substantially prejudiced by the admission of his inculpatory statement following the trial court's order suppressing all statements, confessions and admissions.

On March 27, 1967, Officer McKelvey received a telephone call from Charles Perry who had been an informer for various law enforcement agencies for a number of years and had participated in several narcotics cases. McKelvey and his partners, Officers Dura and Kurowski, obtained $50 in marked currency with recorded serial numbers and met Perry at a pre-arranged location about 7:00 P.M., some two hours after Perry's call.

Perry accompanied by Officer McKelvey, entered a phone booth and made a call. He and the officers then drove about the city for three hours and shortly before 10:00 P.M., Perry made another phone call. Thereafter, the officer took Perry to the rest room of a gas station and completely searched him to make certain that he had no money or narcotics in his possession. The three officers and Perry then drove to the rear of the Mayflower Hotel at 6125 S. Kenwood Avenue, Chicago.

When they arrived, the officers gave Perry the $50 in currency for which Perry signed a receipt listing the serial numbers of the bills. The four men then entered the hotel and proceeded to the first floor. Officers Dura and McKelvey were stationed approximately 40 feet from the door of Room 171. Officer Kurowski placed himself in a vestibule 12 feet away and at the time of the sale was in a position to view the entire transaction. As soon as the

officers were in position, Perry knocked on the door which was partially opened and secured by a chain lock.

Perry testified that he told the defendant he "wanted to 'cop' " and gave the defendant the $50 in marked currency. The door closed and a few moments later defendant opened it and handed Perry five tinfoil packets and then closed the door. Although Officers Dura and McKelvey could not see the defendant's face, they did observe an arm extend into the hall, take the money, and later give something to Perry. Officer Kurowski, however, testified that he was in a position to establish that the person at the door was the defendant. The contents of one of the foil packets was field tested by the officers and the result was positive, indicating that it was heroin. Officer Kurowski then took Perry to the hotel lobby and returned. During this time, Dura and McKelvey knocked on the door to Room 171 and announced their office. Getting no response, they forced the door, entered and found defendant running to the bathroom and throwing two other tinfoil packets into the toilet bowl. McKelvey recovered these packets and the officers arrested the defendant and advised him of his rights. A search of the apartment uncovered $50 in marked money behind a dresser drawer in the room where defendant was seated.

Defendant contends that the search of this apartment without a warrant violated his fourth amendment rights, and that the trial court erred in denying his motion to suppress the articles seized.

The United States Supreme Court, in *United States v. Rabinowitz (1950), 339 U.S. 56, 94 L.Ed. 653, 70 S.Ct. 430,* held that a reasonable search incident to a valid arrest does not violate constitutional safeguards merely because the officers failed to procure a search warrant. The court found that the reasonableness of a search must be determined under the facts of each case. This rule was restated in subsequent decisions. *Chapman v. United States (1961), 365 U.S. 610, 5 L.Ed.2d 828, 81 S.Ct. 766;*

*United States v. Jeffers (1951), 342 U.S. 48, 96 L.Ed. 59, 72 S.Ct. 93.*

The court, however, reevaluated its position in *Chimel v. California (1969), 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034,* wherein defendant was arrested in his home for the burglary of a coin shop and the police proceeded to search his entire home from attic to garage. The court, in reversing the conviction, overruled *Rabinowitz* holding that when an arrest is made, police officers may search the person arrested and the area within his immediate control in order to discover weapons which might aid the defendant in an escape or prevent the destruction of evidence. However, "There is no comparable justification *** for routinely searching any room other than that in which the arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well recognized exceptions, may be made only under the authority of a search warrant." 395 U.S. 752, 763, 23 L.Ed.2d 685, 694.

The issue of the validity of searches carried on prior to June 23, 1969, the date of the *Chimel* decision, was presented in *Williams v. United States (1971), 401 U.S. 646, 28 L.Ed.2d 388, 91 S.Ct. 1148,* and the court held that *Chimel* did not apply retroactively to searches conducted prior to this decision. The validity of these searches was to be judged by the constitutional standards in effect at the time that the searches were conducted. Since the search in *Williams* occurred before the decision in *Chimel,* the court applied the "reasonableness" standard of *Rabinowitz* in upholding the validity of the search.

Defendant, however, maintains that *Coolidge v. New Hampshire (1971), 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022,* renders warrantless searches unreasonable, absent exigent circumstances. The defendant in *Coolidge* was arrested in his home pursuant to arrest and search warrants. His automobile was searched pursuant to a

warrant and the evidence was admitted at defendant's trial. The court, in reversing his conviction, held that the warrants were invalid because they were issued by the Attorney General acting as a justice of the peace, who could not be a "neutral and detached judicial officer." The State, however, contended that even absent a valid warrant, the search of the automobile was justified because it was a reasonable search incident to a valid arrest. The court did not agree and, citing *Williams,* held that the *Rabinowitz* standards were applicable but the facts clearly demonstrated that the search was unreasonable under those standards.

It is evident that *Coolidge* and *Williams* are additional authorities for our application of the "reasonableness" test of *Rabinowitz* to the search conducted in the present case on March 27, 1967. The record before us indicates that police officers observed the defendant selling heroin to an informer and therefore had probable cause to arrest him. When the defendant refused to allow the officers to enter his apartment, they forced the door and apprehended him as he was attempting to dispose of two tinfoil packets in the washroom. He was placed under arrest, and warned of his constitutional rights. The officers, in searching the apartment, found the money behind a dresser drawer which was located in the same room as the bed on which defendant was sitting. In *People v. Johnson (1970), 45 Ill.2d 283,* we held that the search of an entire apartment for the fruits of a burglary was not unreasonable under the *Rabinowitz* standards. In the instant case, there can be no doubt that probable cause for the arrest existed, and, under the facts, the search of the apartment was not unreasonable.

Defendant further contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt. A jury found him guilty of the sale of heroin and the record clearly demonstrates that evidence presented established his guilt beyond a reasonable doubt. As we

stated in *People v. Hairston (1970), 46 Ill.2d 348, 365-66,* "It is the province of the jury to determine the guilt or innocence of an accused and its verdict will not be set aside on review, unless it is palpably contrary to the weight of the evidence or so unsatisfactory as to justify a reasonable doubt of guilt," and "it is the function of the jury to weigh testimony, judge the credibility of the witnesses and determine factual matters in debatable sets of circumstances ***." We find that the evidence in the present case sustains the verdict.

Finally, defendant contends that the admission into evidence of testimony of a State's witness concerning an alleged statement made by the defendant was prejudicial. On December 27, 1967, a hearing was held on a motion to suppress confessions and statements. The trial court denied the motion to suppress noting the pendency of the motion regarding the statements. The State's Attorney said: "The State has no intention of offering an oral statement of the defendant." (There were no written statements.) The court ordered: "By agreement all confessions, statements or admissions of the defendant made at or after the arrest will not be offered and therefore [*sic*] suppressed." Defendant's trial on the indictment charging sale of heroin commenced, but a mistrial was granted on December 29, 1967, because the jury was advised of the second indictment charging the defendant with possession of narcotics.

The motion to suppress statements was not renewed prior to the commencement of the second trial on April 30, 1969. During the presentation of the State's evidence Officer McKelvey, in response to the State's Attorney's question concerning what occurred after defendant had been apprised of his rights, answered: "After I apprised him of his rights I confronted him with the fact that he was under arrest for the sale of narcotics. He stated—oh, then I asked him where the money was and he stated that

he had flushed the money down the toilet bowl." No objection was made. On cross-examination defense counsel, inquiring as to the circumstances surrounding defendant's arrest, asked the officer:

"Q. And what, if anything, did you do at that time?

A. At this particular time I advised him of his constitutional rights.

Q. And then what did you do?

A. Then asked him where the money was."

The record indicates that no motion was made to strike this answer. In *People v. Linus (1971), 48 Ill.2d 349, 355,* we held: "One cannot on appeal raise the issue of the admissibility of evidence where there has not been objection to its admission during the trial." Defendant, however, contends that *People v. Finn (1959), 17 Ill.2d 614,* imposes a duty upon the trial court to preserve defendant's right to a fair trial and that the trial court erred in failing to strike the testimony or declare a mistrial, since the admission was a violation of the court's prior order suppressing this evidence. The court's failure to do so, he argues, was "plain error" and warrants a reversal of his conviction. *People v. Helm (1968), 40 Ill.2d 39,* however, is factually similar to the case before us. In *Helm,* the prosecutor attempted to impeach defendant by showing prior convictions of infamous crimes. Defense counsel successfully objected to the introduction of the record of the assault conviction when an offer of proof was made. The prosecutor proceeded to read the assault record and no objection was made. In rejecting defendant's contention, we stated: "[I]t would have been appropriate for defense counsel to have renewed his objection *** and we do not fault the court for failure to intervene on its own motion after having once correctly ruled on the question. *** 'An accused may not sit idly by and allow irregular proceedings to occur without objection and

afterwards seek to reverse his conviction by reason of those same irregularities.' *People v. Ford, 19 Ill.2d 466, 478-9." 40 Ill.2d 39, 46.*

We believe the rationale of *Helm* must be applied to the present case. When a reference was made to this statement some 15 months after the first trial, no objection was made, and the defense attorney specifically inquired further on cross-examination into the circumstances surrounding this statement. We further note that the evidence of his guilt, even absent the statement, was more than sufficient to convict. We therefore hold that the failure to exclude the statement was not so prejudicial as to constitute reversible error.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*