(No. 66681.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. HENRY M. JANIK, Appellee.

*Opinion filed March 29, 1989.*

WARD and CALVO, JJ., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and James E. Ryan, State's Attorney, of Wheaton (Kenneth R. Boyle, William L. Browers and Cynthia N. Schneider, of the State's Attorneys Appellate Prosecutor, of Elgin), for the People.

Connolly & Ekl, P.C., of Clarendon Hills, for appellee.

JUSTICE RYAN delivered the opinion of the court:

Following a jury trial in the circuit court of Du Page County, defendant, Henry M. Janik, was found guilty of leaving the scene of an accident involving a death (Ill. Rev. Stat. 1983, ch. 95½, par. 11—401(a)) and driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(2)), but not guilty of driving under the influence of alcohol while blood-alcohol concentration was .10 or more (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(1)). He was sentenced to a one-year term of probation, with conditions, including 150 days in the Du Page County jail. The appellate court affirmed the conviction of driving under the influence of alcohol. (165

Ill. App. 3d 453.) The appellate court, with one justice dissenting on the leaving the scene of an accident charge, reversed and remanded for a new trial, holding that the trial judge improperly refused to instruct the jury on the defense of necessity. We granted the State's petition to appeal from the appellate court's reversal. The defendant *pro se* simply filed the brief which he had filed in the appellate court, which raised both the leaving the scene charge and the DUI charge. We therefore consider both charges and affirm both convictions. We find that under no interpretation of the facts was a necessity defense available to the defendant, and that a reasonable doubt is not raised as to the sufficiency of the evidence supporting the DUI conviction.

On Sunday, December 30, 1984, between approximately noon and 6 p.m., defendant was at a bar watching football play-off games. Defendant testified that he was temporarily unemployed at the time and brought with him only $3 or $4. He claimed that during the afternoon he consumed five eight-ounce glasses of draft beer. Two witnesses who saw and talked to the defendant at the bar testified that there was nothing unusual in his behavior, and they did not believe he was under the influence of alcohol. Defendant left the bar at 6:15 p.m., and drove west on Army Trail Road, a four-lane highway. At approximately the same time, Deputy Sheriff Dean Wildermuth was parked on an eastbound lane of Army Trail Road, facing east. Deputy Wildermuth was gesturing to the victim, who was walking eastbound on the outer westbound lane of traffic towards his abandoned car, to get off the road. The victim instead walked towards him, crossing the inside lane of westbound traffic, where the defendant's vehicle struck him.

The defendant's car hit the victim with such impact that the car's windshield shattered, leaving a hole on the right passenger side. The victim's tied tennis shoes were

knocked off and his wallet and a glove apparently flew through the hole in the windshield and were later found in the front passenger seat of defendant's car. The defendant did not stop his vehicle. He testified that he felt an explosion and saw that his windshield was shattered, but he did not observe a person in the street. He thought something had been thrown at him and that he should immediately leave there and go home to call the police. The defendant lived four blocks away and arrived home less than a minute later.

Officer Steven Gabriel of the Village of Carol Stream's police department observed the accident from a nearby parking lot. He testified that the weather was cold, clear and dry. The scene of the accident was a dark rural area, but there were streetlights at the intersections on either side of the accident, the nearest lights being approximately 300 feet from the scene, and there was additional lighting from a shopping center located at the east intersection. Neither before nor after the impact did defendant's car swerve or take evasive action, nor did his brake lights appear to go on. The speed limit was 55 miles per hour, and the officer testified he could not determine whether the car was speeding. He did state, however, that defendant was not driving erratically.

After the accident, Deputy Wildermuth activated his overhead lights, made a U-turn and pursued the defendant. When he started, the defendant was 600 to 800 feet ahead and was 100 to 200 feet ahead when defendant pulled into his driveway. Defendant testified that he had not noticed Wildermuth parked on Army Trail Road, nor did he notice any emergency lights behind him on his way home. As defendant pulled into his driveway, his wife saw the smashed windshield and, when she went outside, she observed the defendant was pale and visibly shaken. She did not smell an odor of alcohol and she did not think he was intoxicated. Defendant told her some-

one had thrown something at the windshield and they had to call the police. Moments later, Wildermuth pulled into the driveway. He noticed that defendant was in a state of mild shock and asked defendant if he knew what he had struck. Defendant replied that he thought it was a mailbox, whereupon Wildermuth informed him it was a pedestrian.

Deputy Wildermuth recovered the victim's glove and wallet from the front passenger seat. Wildermuth noticed the vehicle had heavy right side damage to the hood, headlight assembly and windshield. He also testified that he did not observe the defendant driving erratically, and he had no opinion one way or the other on whether the defendant was under the influence of alcohol.

Wildermuth returned the defendant to the scene of the accident, where arresting officer Carol Lussky, of the Village of Hanover Park's police department, spoke with the defendant in her car. The officers testified defendant had no difficulty moving from one vehicle to the other. Officer Lussky asked the defendant whether he knew what had happened. He responded that he had seen something in the roadway, swerved to avoid it, but hit it anyway. When asked what he thought he hit, defendant said he thought it was a mailbox. Lussky detected a moderate odor of alcohol during the conversation and asked the defendant if he had been drinking. Defendant admitted he had been drinking at a tavern down the road. Lussky then advised the defendant he was under arrest for driving while under the influence of alcohol.

Officer Lussky administered two field sobriety tests, the heel-to-toe test and the finger-to-nose test. These were performed at the scene of the accident in front of an ambulance and next to the officer's car, both of which had their emergency lights activated. The defendant

stated that the lights were at eye level and that he was in a state of shock when performing the tests. In performing the heel-to-toe test, defendant stepped from the line twice to regain his balance and in turning, wavered and was slow in making his turn. During the finger-to-nose test, defendant touched the bridge of his nose with one hand and his upper lip with the other. Officer Lussky testified that she believed the defendant was intoxicated. She based this opinion on the performance of the tests, her years of experience as an officer in stopping drivers suspected of being under the influence of alcohol and her observations and conversations with the defendant. In addition to the odor of alcohol on the defendant, he admitted to the officer that he spent the afternoon in a bar drinking and she noticed his eyes were watery. Also important to the officer were the facts that he had been involved in an accident with a pedestrian, yet even after being advised of this, the defendant claimed to have hit a mailbox, and that he had no knowledge of the victim's wallet or glove recovered from his car.

Defendant was then taken to a hospital where he voluntarily submitted to a blood test, expressing his belief that he was not under the influence of alcohol. During this time the defendant's speech was clear and coherent, and throughout the evening he was polite and cooperative. The blood samples were taken at approximately 8:20 p.m. At trial, Veronica Rotterman, a chemist employed by the State of Illinois Department of Public Health, testified as an expert witness to the alcohol concentration of defendant's blood. She stated that based on the gas chromatography method she used, *i.e.*, the direct liquid injection method, defendant's blood alcohol had an alcohol concentration of .165.

Doctor Christopher Long, chief toxicologist with the Illinois State Police, Bureau of Forensic Science, testi-

fied on the defendant's behalf. He claimed that the printout of defendant's blood-alcohol level was not scientifically accurate or reliable, that the standards Rotterman used were improper and that there was some indication of operator error. Dr. Long testified that the machine used to run the direct injection test should have been tested after five sample runs, but was not tested at all while Rotterman ran approximately 30 samples through the machine. Furthermore, the type of machine used for the tests was replaced shortly thereafter with the more reliable head-space gas chromatograph.

At the trial, defendant tendered two jury instructions regarding the affirmative defense of necessity to the charge of leaving the scene of an accident. One instruction defined the defense (Illinois Pattern Jury Instructions, Criminal, No. 24—25.22 (2d ed. 1981)) and the other included the defense as an element that the State had to disprove beyond a reasonable doubt. He argued that the justification for the instructions was the evidence of his belief that he hit a mailbox in the roadway or that it had been thrown at his car and that he therefore left the scene to call the police because he feared for his own safety. The trial court did not believe that the facts were appropriate for a necessity defense and declined to give the instructions. The appellate court reversed, finding that there was sufficient evidence to support the instructions.

Both the State and defendant are entitled to appropriate instructions which present their theories of the case to the jury when and if the evidence supports such theories. (*City of Chicago v. Mayer* (1974), 56 Ill. 2d 366, 370.) Furthermore, a defendant is entitled to the benefit of any defense shown by the entire evidence, even if the facts on which the defense is based are inconsistent with defendant's own testimony. *People v. Veatch* (1986), 145 Ill. App. 3d 23, 28.

The elements of the affirmative defense of necessity are that: (1) the person claiming the defense was without blame in occasioning or developing the situation, and (2) the person reasonably believed that his conduct was necessary to avoid a greater public or private injury than that which might reasonably have resulted from his conduct. (Ill. Rev. Stat. 1983, ch. 38, par. 7—13.) This defense is viewed as involving the choice between two admitted evils where other optional courses of action are unavailable (*People v. Unger* (1977), 66 Ill. 2d 333, 340; *People v. Krizka* (1980), 92 Ill. App. 3d 288, 290), and the conduct chosen must promote some higher value than the value of literal compliance with the law (*People v. Planer* (1987), 161 Ill. App. 3d 938, 941-42).

We agree with the trial court that under no reading of the facts would necessity be a defense available to this defendant for the charge of leaving the scene of an accident. Under the facts as presented by the State, and believed by the jury, defendant was convicted of leaving the scene of an accident involving a death. (Ill. Rev. Stat. 1983, ch. 95½, par. 11—401(a).) Section 11—401(a) provides that a driver "involved in a motor vehicle accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident." In *People v. Nunn* (1979), 77 Ill. 2d 243, we had occasion to interpret section 11—401 and we held that the legislature did not intend to subject a person to the penalty of this section of the statute if he unknowingly commits the offense. (77 Ill. 2d at 249.) Rather, to support a conviction, the prosecution is required to prove that the accused had knowledge that the vehicle he was driving was involved in an accident or collision and that he left the scene of that accident, though not necessarily that defendant was aware he caused an injury or death. Ill. Rev. Stat. 1983, ch. 95½, par. 11—401(a); *Nunn*, 77 Ill. 2d at 252.

Defendant contends that the facts as he presented them, if believed by the jury, would make a necessity defense available. Defendant argued that he thought someone had thrown something at him and he believed it was a mailbox. Fearful for his safety, he decided the best course of action was to proceed home, four blocks away. Necessity requires that the conduct chosen be an offense, but it is justified if defendant reasonably believes it was necessary to avoid a greater harm than resulted from his illegal conduct. (Ill. Rev. Stat. 1983, ch. 38, par. 7—13.) However, under these facts, his conduct does not constitute an offense because it does not establish that there had been an accident or collision for which he had a duty to stop and render aid or information pursuant to sections 11—401(a) and 11—403. (Ill. Rev. Stat. 1983, ch. 95½, pars. 11—401(a), 11—403.) Rather, these facts would tend to establish that someone, in an act of vandalism, had thrown something at his vehicle, in which case he had no duty to stop. Moreover, necessity requires a balancing of two evils. (*Unger*, 66 Ill. 2d at 340.) According to defendant he was unaware of an accident and therefore could not have been balancing between the lesser of two evils and making a choice which promoted some higher value than literal compliance with the law. His testimony simply does not reflect that he was confronted with and made such a choice.

Defendant's testimony, if believed by the jury, would not rise to a necessity defense. Instead, it would have refuted one of the elements of the crime of leaving the scene of an accident. The State is required to prove beyond a reasonable doubt that he *knew* he was involved in a motor vehicle accident or collision. (*Nunn*, 77 Ill. 2d at 252.) Defendant attempts to argue he did not know of the accident and thus did not have a duty to stop. If believed, he could not have been convicted under section 11—401 (Ill. Rev. Stat. 1983, ch. 95½, par. 11—401);

however, these facts would not constitute a necessity defense.

The defendant was also convicted of driving under the influence of alcohol (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(2)) but was acquitted of driving with a blood-alcohol concentration of .10 or more (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(1)). On appeal, defendant contends that he was not proved guilty of DUI beyond a reasonable doubt. In support of this argument, he points out that his wife and two patrons of the bar testified he did not appear intoxicated. Likewise, two of the officers at the scene of the accident, Wildermuth and Gabriel, did not notice erratic driving, nor could they form an opinion on his intoxication. The sobriety tests were administered, he argues, under less than ideal conditions. At the scene of the test a number of people were present, cars were driving by, and an ambulance and police car nearby had their flashing lights activated. The nurse who took his blood sample did not notice symptoms of intoxication or an odor of alcohol, and Doctor Christopher Long effectively discredited the conclusion that his blood-alcohol level was .165.

The defendant's intoxication was a question of fact, and we recognize that it is the jury's responsibility to resolve factual disputes, to assess the credibility of the witnesses, and to determine the sufficiency of the evidence of guilt. (*People v. Bradford* (1985), 106 Ill. 2d 492, 502.) "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the

defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) We will not reverse a criminal conviction unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *Collins*, 106 Ill. 2d at 261.

Weighing the evidence in a light most favorable to the prosecution, we cannot say that it was so improbable or unsatisfactory as to raise a reasonable doubt. The defendant admitted spending the afternoon in a tavern and drinking beer. The jury was free to disregard or give little weight to the testimony of his wife and the two acquaintances at the bar. Also, defendant's behavior after the collision could be interpreted as irrational. Defendant hit a pedestrian on the roadway with enough force to cause extensive damage to the right side of his car. His windshield was shattered and a wallet and glove from the victim flew into the passenger seat. At no time did the defendant brake or swerve his car, before or after impact. A police officer immediately followed him with lights flashing, yet he claims not to have noticed him. Defendant was repeatedly informed he hit a pedestrian, but he nevertheless insisted he had hit a mailbox. Lastly, Officer Lussky smelled alcohol and administered two field sobriety tests, in both of which defendant performed poorly. The State acknowledges that in reaching the conclusion that he was intoxicated they did not rely on the testimony of Rotterman that the blood-alcohol level was .165.

A DUI conviction may be sustained based solely on the testimony of the arresting officer, if credible. (*People v. Fowler* (1981), 98 Ill. App. 3d 202, 204; *People v. German* (1974), 22 Ill. App. 3d 389, 391.) Officer Lussky testified as to her extensive experience with drunk-driving cases. She noticed the odor of liquor, defendant's watery eyes and his poor test performance and concluded he was intoxicated. Though there was conflict in the evi-

dence, it was the province of the jury, not the appellate court or this court, to resolve it, and the jury apparently was satisfied, based on Officer Lussky's testimony and the other evidence, that defendant was intoxicated. Though the reliability of the blood-alcohol test was questionable, the State does not rely on it for support of the conviction, and even if it were completely ignored, there was sufficient evidence to find the defendant guilty of driving under the influence. *People v. Foley* (1987), 152 Ill. App. 3d 354, 357.

We find the cases defendant relies upon distinguishable. (*People v. Thomas* (1975), 34 Ill. App. 3d 578; *People v. Schultz* (1973), 10 Ill. App. 3d 602; *People v. Clark* (1970), 123 Ill. App. 2d 41.) In each of those cases the defendants received physical injuries needing medical care as a result of an auto accident. None of the defendants were given field sobriety tests, and the convictions were based only on the observations of the arresting officers. In those cases, the appellate court reversed, concluding that the injuries could have produced the symptoms the arresting officers observed and a reasonable doubt existed as to the convictions. Defendant in our case suffered no injuries, admitted to drinking alcohol and failed the sobriety tests. These facts, with his behavior, which the jury could reasonably have believed was irrational, were sufficient to support a DUI charge. We do not believe the evidence was so unsatisfactory as to raise a reasonable doubt of defendant's guilt, and, therefore, the conviction must stand.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*

WARD and CALVO, JJ., took no part in the consideration or decision of this case.