THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY HILEMAN, Defendant-Appellant.

Fifth District No. 5—88—0012

Opinion filed June 19, 1989.

Daniel M. Kirwan and Janet L. Gandy, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

H. Wesley Wilkins, State's Attorney, of Jonesboro (Kenneth R. Boyle, Stephen E. Norris, and Ellen Eder Irish, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

The defendant, Gary Hileman, was convicted of leaving the scene of an accident (Ill. Rev. Stat. 1987, ch. 95½, par. 11—402) by the circuit court of Union County sitting without a jury. Defendant was sentenced to 90 days' probation. As incidents of that probation, defendant was ordered to pay a $100 fine and restitution, which is to be determined by the probation department. On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt and that the order of restitution is invalid.

At trial, Deborah Cunningham testified that at 10:30 p.m. on August 16, 1987, while driving a 1986 Ford Escort wagon on an unmarked blacktop road, she saw a rust-colored AMC Gremlin weaving on the road toward her from approximately 100 feet away. She pulled off of the road as far as she could and stopped, but the other car hit the left front fender of her car, then swerved away from her and kept going. She was stopped at the time of the accident. She heard a "loud hit and scrape" of the impact and felt "not a big jolt." She opined that the Gremlin was traveling 55 miles per hour. She identified defendant, who lived down the road from her, as the driver of the Gremlin, because her car lights flashed on him as he weaved toward her. She could only state that defendant had a growth of beard and was not wearing a suit at the time of the accident. She could not remember if he wore a hat or the kind of shirt, or otherwise identify defendant's clothing. The only other motor vehicle in the area was her father's, who was some distance behind her. After the accident, her car door was difficult to open because a dent, which was caused by the accident, pinned the door shut. From photographs of her car, Ms. Cunningham showed the court the damage caused by the accident. Ms. Cunningham admitted that although she told the arresting officer that the car that hit her vehicle was either a Hornet or Gremlin, her written statement to police reflects that it was a Hornet.

Ms. Cunningham's written statement was admitted into evidence. The statement stated, in part, that defendant was driving a rust-colored Hornet and that defendant "did not appear to realize he had hit [Ms. Cunningham]."

Sherman Mays, Ms. Cunningham's father, testified that on August 16, 1987, he was travelling 300 yards behind her when she was involved in an accident. He did not see the accident but did see defendant, who almost ran Mays off the road. Defendant was driving a brown Hornet, and Mays saw defendant's face when Mays' lights flashed on him. He opined that he observed defendant, whom he previously knew, between 5 and 10 seconds. The Hornet was travelling between 30 and 40 miles per hour.

Scott Harvel, Union County deputy sheriff, testified that he investigated the accident involving Ms. Cunningham. At approximately midnight on August 16, 1987, he went to defendant's residence. Defendant stated that he had not gone anywhere in the previous two or three hours. Harvel observed a brown AMC Gremlin, which had a dent to the driver's door and to the rear panel. The dent started at the driver's door and ended at the rear quarter panel. Mays observed fresh mud on the Gremlin but did not recall seeing paint which did not match the color of the Gremlin. After Harvel found the scrape, he started to question defendant about it, and defendant told him it was time to leave.

Defendant testified that on August 16, 1987, at approximately 10:30 p.m., he and his Gremlin were at home, and they had been at home since 11 a.m. that morning. Pictures of the Gremlin admitted into evidence showed no damage to the driver's door or the rear left quarter panel, and defendant denied that he had any repair work done in that area since Ms. Cunningham's accident. Defendant opined that Mays and Ms. Cunningham were not telling the truth, but he could give no reason why they would be untruthful.

In finding defendant guilty, the court stated:

"As to the testimony offered, and I think that everybody in Court heard it, Mrs. Cunningham testified that there was an accident. I don't think that there was any question that there was an accident. As to the paint transference she testified that the initial blow was on a rubber bumper. I can understand why there wouldn't been any paint from a glancing blow. There doesn't appear to be much damage to the Cunningham vehicle. However, this is not a civil case and I [sic] not asked to determine the amount of the damage. The only thing I am required to do is to determine and ascertain from the facts whether or not an accident occurred, and whether or not the defendant, Mr. Hileman, was driving the car that left the scene. The Court has heard two witnesses testify, Mrs. Cunningham, who made a specific I.D. There was no question in her mind that the

defendant was driving the vehicle. The testimony of the witness who came along immediately after the accident, that he saw the car, and that he saw the defendant, Mr. Hileman, driving the car. The information charges leaving the scene of an accident, that the defendant knowingly failed to stop at the scene or to report such an accident, which resulted in vehicle damage. There appears to have been vehicle damage. I am not saying how much damage there was."

■■ Initially, defendant contends that, in order to obtain a conviction under section 11—402(a), the State must prove that he knowingly left the scene of an accident and that the State failed to prove that he knew that an accident. occurred. Defendant's argument is based on the similarity in language of sections 11—401 and 11—402 of the Illinois Vehicle Code. Section 11—401 states:

"Motor vehicle accidents involving death or personal injuries. (a) The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until the requirements of Section 11—403 have been fulfilled. Every such stop shall be made without obstructing traffic more than is necessary.

\* \* \*

(c) Any person failing to comply with paragraph (a) of [sic] shall be guilty of a Class A misdemeanor." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401.)

Section 11—402, of which defendant stands convicted of violating, states:

"Motor vehicle accident involving damage to vehicle. (a) The driver of any vehicle involved in a motor vehicle accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such motor vehicle accident or as close thereto as possible, but shall forthwith return to and in every event shall remain at the scene of such motor vehicle accident until the requirements of Section 11—403 have been fulfilled. Every such stop shall be made without obstructing traffic more than is necessary.

Any person failing to comply with this Section shall be guilty of a Class A misdemeanor." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—402.)

Defendant concedes that section 11—402 does not specify a specific

mental state for conviction; however, he analogizes to section 11—401(a) and *People v. Nunn* (1979), 77 Ill. 2d 243, 396 N.E.2d 27, to support his argument that section 11—402 requires the State to prove that he knew an accident had occurred. In *Nunn*, our supreme court held that the legislature did not intend to subject a person to the Class A misdemeanor penalty of section 11—401 if he unknowingly commits the offense. Rather, to support a conviction under section 11—401, the prosecution is required to prove that the accused had knowledge that the vehicle he was driving was involved in an accident or collision and that he left the scene of an accident, though not necessarily that defendant was aware he caused an injury or death. (*People v. Janik* (1989), 127 Ill. 2d 390, 399.) Based on the reasoning of our supreme court, we conclude that our legislature did not intend to subject a person to the Class A misdemeanor penalty of section 11—402 if he unknowingly commits the offense. Rather, to support a conviction under section 11—402, the prosecution is required to prove that the accused had knowledge that the vehicle he was driving was involved in an accident, though not necessarily that defendant was aware he caused damage to such other vehicle.

 Based on the evidence at trial, we cannot find that defendant was not proved guilty beyond a reasonable doubt. It is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. Where the evidence is merely conflicting, a court of review will not substitute its judgment for that of the trier of fact. (*People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733, 734-35.) A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. Once a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276-77.) In the case at bar, the trial court could find that the defendant knowingly damaged the Cunningham motor vehicle because the accident made a fairly loud scraping sound of some duration. The court could have rejected Ms. Cunningham's opinion, as stated in her statement to the police, that defendant did not appear to realize that he had been involved in an accident. The accident occurred in the area

of defendant's residence and both Mays and Ms. Cunningham were acquainted with defendant to the extent that they knew who he was when they saw him. Both witnesses saw defendant when their vehicles' headlights flashed on him. Defendant contends that if he had been travelling at the speed Ms. Cunningham testified he had been travelling, both cars would have sustained more damage. The pictures of defendant's vehicle were taken approximately two weeks before trial; therefore, the court could have found that defendant had the vehicle repaired between the time of the accident and the time pictures were taken. Although the pictures of defendant's Gremlin show some damage, that damage is not the kind described by Harvel. The court could have rejected defendant's testimony that no repairs were made as not being credible, especially in light of Harvel's testimony that soon after the accident he observed a lengthy dent in the Gremlin. It appears that the two cars came together momentarily along side of each other and when defendant realized he had hit something he swerved away; therefore, only minor damage may have been sustained. Further, the court found that the accident involved a "glancing blow." Therefore, when the evidence is viewed in the light most favorable to the State, this court cannot find that the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. Defendant's conviction for leaving the scene of an accident involving damage to another vehicle is affirmed.

■ Defendant lastly contends that the restitution order requiring the probation office to determine the form and the amount of restitution is invalid because the trial court has the power to fix restitution. The judgment order, from which defendant appeals, recites, in part, "h. Restitution to be determined by the Probation Office." The State does not contest this issue. Section 5—5—6 of the Unified Code of Corrections states:

> "[T]he court shall at the sentence hearing determine whether restitution is an appropriate sentence to be imposed on each defendant convicted of an offense. If the court determines that an order directing the offender to make restitution is appropriate the offender may be sentenced to make restitution which shall be determined by the Court." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6.)

Here, the trial court left that determination to the probation authorities. The failure of the trial court to make a determination as to the amount and conditions of payment does not comply with section 5—5—6; therefore, this cause must be remanded for the purposes of the trial court making the required determination of the amount of resti-

tution and the conditions of its payment as required by statute. See *People v. Daminski* (1980), 80 Ill. App. 3d 903, 906, 400 N.E.2d 708, 711.

The judgment of the circuit court of Union County finding defendant guilty of leaving the scene of an accident and sentencing him to probation is affirmed. However, that portion of the trial court's order directing that defendant make restitution in the amount as determined by the probation office is reversed; and this cause is remanded to the circuit court of Union County for the purpose of making a judicial determination of the amount and conditions of payment as required by section 5—5—6 of the Unified Code of Corrections.

Affirmed in part; reversed and remanded in part.

HARRISON and GOLDENHERSH, JJ., concur.