THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALFRED E. BUSCHER, Defendant-Appellant.

Fifth District   No. 5—90—0113

Opinion filed October 30, 1991.

WELCH, J., dissenting.

Lawrence G. Dirksen, of Olympia Fields, for appellant.

Don Sheafor, State's Attorney, of Vandalia (Kenneth R. Boyle, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

Defendant, Alfred Buscher, was charged in the circuit court of Fayette County with driving under the influence of alcohol (DUI) in violation of section 11—501(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)). Defendant was found guilty after a bench trial, fined $400, and placed on conditional discharge for one year.

At trial, Vandalia police officer Michael Koonce testified that while on routine patrol on July 3, 1989, he observed the defendant's vehicle sitting on the shoulder of the road near an intersection. Upon approaching the vehicle, Koonce heard the tires spinning and observed several highway signs underneath it. He also noticed that the vehicle had sustained damage to its side. When Koonce asked defendant what was wrong, defendant mumbled and appeared confused. Koonce thereupon asked defendant to step out of his vehicle and requested his driver's license. Defendant first gave the officer his work identification card but then produced his driver's license. Koonce observed that defendant was swaying and was unsteady, and Koonce detected a "moderate" odor of alcohol on his breath.

At this point, Officers Julius Banal and Kent Emerick arrived on the scene. Officer Koonce had defendant perform two field sobriety tests: the walk-and-turn test and the one-legged-stand test. Defendant was unable to perform either successfully. Officer Emerick gave defendant the horizontal-gaze-nystagmus test, the results of which are not indicated in the record. Officer Koonce thereupon placed defendant under arrest for DUI and transported him to the county jail. While there, defendant was asked to take a breathalyzer test, but he declined to do so.

Officers Banal and Emerick testified that defendant was unsteady on his feet and appeared confused, and both stated that they detected a "moderate" odor of alcohol. Both also stated that, based

on their observation and experience, defendant was under the influence of alcohol and was unfit to operate a motor vehicle. On cross-examination, Officer Banal stated that defendant's face was not flushed and appeared normal, but his eyes were "a little" glassy. Banal also stated that defendant was polite and cooperative. None of the officers observed any injury to defendant, and all opined that he was under the influence of alcohol.

Defendant testified that he went to the Vandalia Country Club after work and had several drinks shortly after arriving. He called his wife, who met him there around 8 or 9 p.m. Defendant stated that he had ceased drinking any alcoholic beverages prior to that time and left around 11 p.m. He, his wife, and several friends were to meet at a nearby restaurant. The accident occurred while he was en route. Defendant also testified that he felt disoriented or confused after the accident.

The day following his arrest, the defendant called Judge William Kelly, whom defendant knew socially through the Vandalia Country Club. The defendant told Judge Kelly that he had been drinking at the country club the previous evening and had been arrested for driving under the influence after having had an accident. Defendant also told Judge Kelly that he had refused to take a breath test and asked Judge Kelly for advice. Judge Kelly suggested to the defendant that he contact the prosecutor's office.

On August 9, 1989, defendant filed a petition to rescind his statutory summary suspension. The petition was assigned to Judge Kelly's docket and set for hearing on August 23, 1989. Prior to the hearing, Judge Kelly recused himself. He also informed the prosecutor of the reason for his recusal and related to the prosecutor the substance of his conversation with the defendant. On August 22, 1989, the prosecutor informed defense counsel that Judge Kelly had recused himself. The rescission hearing was rescheduled for September 8, 1989, and trial on the DUI charge was held on December 28, 1989. The State's first witness was Judge Kelly, who testified that defendant had called him the day after his arrest. Judge Kelly also related the substance of their conversation. Defendant made no motions *in limine* to exclude Judge Kelly's testimony, nor did he object thereto, but he did move for a mistrial both after cross-examining Judge Kelly and at the close of all the evidence. The trial court took defendant's motions under advisement and subsequently denied both.

On appeal, defendant first argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt. When review-

ing a conviction based upon a challenge to the sufficiency of the evidence, it is not the function of the reviewing court to reweigh the evidence and substitute its own judgment for that of the trial court. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Rather, the conviction will be affirmed unless the evidence, when viewed in a light most favorable to the prosecution, "is so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt." (*People v. Janik* (1989), 127 Ill. 2d 390, 402, 537 N.E.2d 756, 761.) A conviction for driving under the influence of alcohol may be sustained based solely upon the testimony of the arresting officers (see *People v. Fowler* (1981), 98 Ill. App. 3d 202, 423 N.E.2d 1356), providing such testimony is sufficient to sustain the State's burden to prove beyond a reasonable doubt that defendant was under the influence of alcohol. (*People v. Winfield* (1973), 15 Ill. App. 3d 688, 304 N.E.2d 643.) It is the province of the trier of fact to weigh the evidence and to determine the credibility of witnesses, and courts of review are particularly deferential to the findings of the trier of fact with regard to witness credibility.

Officer Koonce testified that he arrested defendant based upon defendant's failure of the two field sobriety tests, his swaying and confusion, and the moderate odor of alcohol on his breath. Koonce admitted that his memory about the events in question was "fuzzy" and that at the suspension hearing he had mistakenly testified that he noticed a "strong" odor of alcohol and that defendant had correctly performed the walk-and-turn test. Koonce also indicated that defendant's eyes and face appeared normal, that his clothes were not disorderly, and that his demeanor was polite and cooperative. Koonce stated that defendant had no trouble exiting his vehicle and though unsteady, defendant did not fall, stagger, or otherwise need assistance. Koonce also testified that defendant appeared confused, but he acknowledged that he could not say for sure that this and defendant's unsteadiness and confusion were not the result of the accident.

Officer Emerick likewise acknowledged that the accident was substantial enough to have knocked a person around and that an accident victim can be confused and disoriented and is usually nervous. Like Koonce, Emerick did not recall anything abnormal about defendant's appearance or demeanor. Emerick also testified that defendant swayed and was unsteady but did not stagger or need assistance to stand. When asked why he believed defendant was under the influence of alcohol, Emerick said his belief was based upon defendant's mumbled speech, the moderate odor of alcohol on his

breath, and his conclusion that given the relatively minor nature of the accident it was unlikely that the accident was responsible for defendant's behavior. On cross-examination, however, Emerick stated that his opinion that defendant was under the influence could have been wrong.

Defendant's wife, Patricia Buscher, testified that she did not see defendant have anything to drink while they were at the club and at the time they left, she noticed nothing unusual about defendant's behavior. Mrs. Buscher further testified that she had been married to the defendant for 30 years and would have been able to tell if defendant had been under the influence of alcohol. She stated that there was no doubt in her mind but that defendant was capable of driving when he left the club. Mrs. Buscher also testified that defendant was complaining that night that he had hit his head in the accident and that it hurt. Finally, Mrs. Buscher testified that defendant had a distinctive manner of speech and that some people called him by the nickname "Mumbles." The trial court also noted that defendant had a "unique" speaking style which could be considered by some to be mumbling.

■ While the evidence against defendant was based primarily on the testimony of Koonce and the other officers, after carefully reviewing their testimony, we cannot conclude that such testimony is so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. Viewing the evidence in a light most favorable to the prosecution, our review of the record leads us to conclude that the trial court's finding that defendant was proved guilty beyond a reasonable doubt is not against the manifest weight of the evidence.

■ Defendant also argues that he was denied a fair trial as a result of judicial and prosecutorial misconduct. Specifically, he maintains that without notice of any kind to defendant, Judge Kelly appeared as a witness for the prosecution and divulged the contents of their conversation. Defendant maintains that Judge Kelly's call to the prosecutor constituted an improper *ex parte* communication and that both Judge Kelly and the prosecutor had an absolute duty to notify him. Defendant further maintains that he was prejudiced by their failure to do so. We note, however, that at no time did defendant file any pretrial motion to preclude such testimony, nor did he object at trial. It was only after defense counsel cross-examined Judge Kelly that defendant moved for a mistrial. It is clear from the record of the statutory summary suspension hearing that defendant knew that Judge Kelly had related the substance of his conversation with the defendant to the prosecutor when he in-

formed the prosecutor of his decision to recuse himself. It is also clear that defendant knew that Judge Kelly might be called as a witness. Defendant cannot claim that Judge Kelly's testimony came as a surprise. Having made no objection at trial and having taken no pretrial steps to preclude Judge Kelly's testimony, defendant cannot now be heard to claim reversible error. See *People v. Marigny* (1972), 51 Ill. 2d 445, 282 N.E.2d 734; *People v. Burnett* (1979), 74 Ill. App. 3d 990, 394 N.E.2d 456.

The judgment of the circuit court of Fayette County is affirmed.

Affirmed.

CHAPMAN, J., concurs.

JUSTICE WELCH, dissenting:

I must respectfully dissent with the majority opinion of this court. As the majority correctly notes, this court is not to reweigh the evidence and substitute its own judgment for that of the trial court. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Nevertheless, where the evidence, viewed in a light most favorable to the prosecution, is so improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt, the conviction must be reversed. (*People v. Janik* (1989), 127 Ill. 2d 390, 402, 537 N.E.2d 756, 761.) It is my opinion, after carefully reviewing the record herein, that defendant's conviction should be reversed because a reasonable doubt as to whether defendant was under the influence was indeed raised by the evidence.

As the majority notes in its opinion, the evidence against defendant was based almost entirely on the testimony of Koonce and the other officers. Officer Koonce testified that the basis for his arrest of defendant for driving under the influence was defendant's failure of the two field sobriety tests, his swaying and confusion, and the moderate odor of alcohol on his breath. Koonce admittedly was "fuzzy" in his memory of the events in question, and his trial testimony regarding the strength of the odor of alcohol on defendant's person as well as whether defendant had correctly performed one of the field sobriety tests changed from his previous testimony at the suspension hearing. Koonce's opinion regarding defendant's swaying and confusion was also impeached by his trial testimony that defendant had no trouble exiting his vehicle and, though unsteady, defendant did not fall, stagger, or otherwise need assistance. Moreover, Koonce's assessment that defendant was "confused" was

tempered by his admission that he could not say for sure that this and defendant's unsteadiness were not the result of the accident.

Indeed, Officer Emerick acknowledged that the accident in which defendant's vehicle collided with several highway signs was substantial enough to have knocked a person around and that accident victims can be confused, disoriented, and nervous. Emerick, however, based his opinion that defendant was under the influence of alcohol on defendant's mumbled speech, the moderate odor of alcohol on his breath, and his conclusion that given the relatively minor nature of the accident it was unlikely that the accident was responsible for defendant's behavior. Emerick later admitted on cross-examination that his opinion that defendant was under the influence could have been wrong. Emerick, like Officer Koonce, did not recall defendant's eyes being bloodshot, red, or glassy, nor did he recall defendant's face being flushed or anything else abnormal about defendant's appearance. While Emerick testified that defendant swayed and was unsteady, he also admitted that defendant did not stagger or fall and did not need any assistance to stand. Officer Banal also offered an opinion that defendant was under the influence of alcohol and unfit to operate a motor vehicle based upon the "moderate" odor of alcohol and defendant's unsteadiness on his feet.

Each of the three officers responding to the scene of the accident described defendant's demeanor as polite and cooperative. The officers also testified that the defendant's clothing was orderly. Moreover, the record indicates that defendant had a "unique" speaking style, which could be considered by some to be mumbling, and in fact, was nicknamed "Mumbles." In addition, while Officer Emerick gave defendant the horizontal-gaze-nystagmus test, there was nothing in the record to indicate the results of this field sobriety test. Defendant testified that he felt disoriented or confused after the accident. Although the officers relied on defendant's response that he was not injured in the accident, the record indicates that defendant had reported hitting his head and that his head hurt.

Although convictions for driving under the influence may be sustained solely upon the testimony of the arresting officers, that testimony must be sufficient to sustain the State's burden to prove beyond a reasonable doubt that defendant was under the influence of alcohol. (*People v. Winfield* (1973), 15 Ill. App. 3d 688, 304 N.E.2d 643.) In my opinion there was conflicting evidence as to the strength of the odor of alcohol, results of the field sobriety tests, and drunken appearance or demeanor of defendant. Moreover,

150

defendant's swaying, confusion, and inability to pass the "walk-and-turn" and one-legged-stand tests could admittedly have been a result of injury from the accident. Most notedly, Officer Emerick admitted that he could have been wrong in his opinion that defendant was under the influence. I must conclude, therefore, that the evidence supporting the officers' opinions that defendant was under the influence of alcohol was insufficient to sustain the State's burden beyond a reasonable doubt. Accordingly, I would reverse the judgment of the circuit court of Fayette County, Illinois.