THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD BERQUIST *et al.*, Defendants-Appellants.

Second District   Nos. 2—91—0970 through 2—91—0989 cons.

Opinion filed January 28, 1993.

Carl F. Schroeder, Ltd., of Wheaton (Carl F. Schroeder, of counsel), Darrell Dunham, of Murphysboro, and Duane D. Young, of Heckenkamp, Simhauser & LaBarre, P.C., of Springfield, for appellants.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, John X. Breslin, and Jay Paul Hoffmann, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Richard Berquist, defendant, and 19 other individuals were arrested for criminal trespass to real property at the Concord West Medical Center (Concord West) in Westmont, Illinois. (Ill. Rev. Stat. 1991, ch. 38, par. 21—3(a).) The arrested persons were divided into two groups for trial, and in both instances the jury found defendants guilty of criminal trespass to real property. Defendants appeal from the juries' verdicts and the court's judgments thereon. Berquist's case was consolidated with the 19 other similar cases for appeal. The sole issue concerns the defense of necessity. For the following reasons, we affirm.

Concord West Medical Center is a privately run health-care facility which performs reproductive-related services and surgeries, including abortion up to 12 weeks gestation. In the morning hours of January 18, 1991, defendants arrived at Concord West carrying picket signs. Approximately 10 people entered the facility, went past the reception desk, and sat on the floor of a hallway leading to the operating rooms while reading Bibles and reciting prayers. Those that remained outside the building sat on the front steps and blocked the entrance.

Officer Larry Harrison, a police officer for the Village of Westmont and security guard for Concord West, advised the 10 persons sitting inside the clinic that they were trespassing and would be placed under arrest if they did not vacate the premises. Since the protesters refused to leave the facility, Officer Harrison and Sergeant Randall Sticha, also of the Westmont police, placed each of the 10 persons under arrest and carried them to a squad car to be transported to the police station.

During this time, Sergeant Robert B. Smith, also of the Westmont police, was patrolling the area and observed several persons blocking the entrance to Concord West. Sergeant Smith advised these persons to leave the premises because they were trespassing on private property. Since they refused to leave the premises, Smith placed them under arrest and assisted in physically placing them into the squad cars.

On January 23, 1991, defendants were charged with the offense of criminal trespass to real property for protesting at Concord West. Prior to trial, defendants notified the State of their intent to plead ne-

cessity as an affirmative defense. The State responded by filing a motion *in limine* to preclude defendants from presenting any evidence offered in support of their affirmative defense. The motion was granted. On appeal, defendants contend that the court erred in granting the State's motion *in limine* which barred them from presenting any evidence in support of the defense of necessity.

■ Motions *in limine* are encouraged in criminal cases to exclude collateral or extraneous matters. (*People v. Watkins* (1991), 220 Ill. App. 3d 201, 211.) However, this type of motion should be used with caution so that it does not unduly restrict the opposing party's case or deprive a defendant of a legally viable defense. (*People v. Henderson* (1991), 223 Ill. App. 3d 131, 135.) When an affirmative defense is raised, which is unavailable as a matter of law, the trial court may properly grant a motion *in limine* prohibiting the defendant from introducing evidence in support of that defense. (*People v. Downey* (1987), 162 Ill. App. 3d 322, 334.) A reviewing court will not reverse the trial court's decision to grant a motion *in limine* absent an abuse of discretion. *People v. Salazar* (1991), 211 Ill. App. 3d 899, 910; *Downey*, 162 Ill. App. 3d at 334.

■ The defense of necessity is valid, as a matter of law, if the defendant is without blame in occasioning or developing the situation. Additionally, the defendant must reasonably believe that his conduct, which would otherwise be an offense, was necessary to avoid a public or private injury greater than the injury which might have reasonably resulted from his own conduct. (Ill. Rev. Stat. 1991, ch. 38, par. 7— 13; *People v. Janik* (1989), 127 Ill. 2d 390, 399.) Necessity involves a "choice between two admitted evils where other optional courses of action are unavailable [citations], and the conduct chosen *** promote[s] some higher value than the value of literal compliance with the law." *Janik*, 127 Ill. 2d at 399.

In this case, defendants contend that they were entitled to raise the defense of necessity by presenting evidence that their conduct was necessary to prevent a greater injury, that being the termination of fetuses via abortion. As an offer of proof in support of their assertion that life begins at conception and that their trespass was necessary to prevent the "murder of unborn children," defendants refer to the following language of section 1 of the Illinois Abortion Law of 1975:

> "Without in any way restricting the right of privacy of a woman or the right of a woman to an abortion under those decisions [of the United States Supreme Court of January 22, 1973], the General Assembly of the State of Illinois do [*sic*] sol-

emnly declare and find in reaffirmation of the longstanding policy of this State, that the unborn child is a human being from the time of conception and is, therefore, a legal person for purposes of the unborn child's right to life and is entitled to the right to life from conception under the laws and Constitution of this State. Further, the General Assembly finds and declares that longstanding policy of this State to protect the right to life of the unborn child from conception by prohibiting abortion unless necessary to preserve the life of the mother is impermissible only because of the decisions of the United States Supreme Court and that, therefore, if those decisions of the United States Supreme Court are ever reversed or modified or the United States Constitution is amended to allow protection of the unborn then the former policy of this State to prohibit abortions unless necessary for the preservation of the mother's life shall be reinstated." (Ill. Rev. Stat. 1991, ch. 38, par. 81—21.)

The primary witness for defendants at the hearing on the State's motion *in limine* was Dr. Eugene Diamond. Dr. Diamond's testimony concerned the development of the fetus at various gestational periods and the impact of different methods of abortion on the fetus.

In granting the State's motion *in limine,* the trial court relied on *People v. Krizka* (1980), 92 Ill. App. 3d 288, *People v. Stiso* (1981), 93 Ill. App. 3d 101, and *People v. Smith* (1987), 161 Ill. App. 3d 213, in finding, as a matter of law, that necessity is not a valid defense to the criminal trespass of a facility which performs abortions. Defendants agree that the above-cited cases indicate that the State of Illinois did not recognize the defense of necessity as a valid defense to the criminal trespass of an abortion clinic after *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705. The thrust of defendants' contention on appeal is that the decisions of the United States Supreme Court in *Webster v. Reproductive Health Services* (1989), 492 U.S. 490, 106 L. Ed. 2d 410, 109 S. Ct. 3040, and *Planned Parenthood v. Casey* (1992), 505 U.S. ___, 120 L. Ed. 2d 674, 112 S. Ct. 2791, eroded the holding of *Roe v. Wade,* which did not reach the question of when life begins. Defendants contend that the holdings of *Webster* and *Casey,* coupled with the legislature's declaration that the State of Illinois recognizes the unborn fetus as a human being from the time of conception and pronouncement that abortion will be illegal in Illinois if *Roe v. Wade* is ever reversed or modified, illustrate that their trespass was necessary to prevent the greater evil of "child killing."

In *Roe v. Wade*, the United States Supreme Court held that the due process clause of the fourteenth amendment (U.S. Const., amend. XIV) protects the right to privacy against State action and encompasses a woman's qualified right to terminate her pregnancy via abortion. (*Roe*, 410 U.S. at 154, 35 L. Ed. 2d at 177, 93 S. Ct. at 727.) This decision struck down as unconstitutional a Texas statute which criminalized abortion unless the procedure was necessary to save the life of the mother. (*Roe*, 410 U.S. at 164, 35 L. Ed. 2d at 183, 93 S. Ct. at 732.) Although *Roe* determined that a State cannot override the woman's right to privacy concerning her pregnancy, it did not give a woman the right to an abortion on demand. Instead, the Supreme Court determined that the State has a legitimate interest in protecting both the pregnant woman's health and the potentiality of human life. Each interest grows and reaches a compelling point after the first trimester of pregnancy. (*Roe*, 410 U.S. at 162-63, 35 L. Ed. 2d at 182, 93 S. Ct. at 731.) The Court further determined that the State has a compelling interest in the mother's health after the first trimester of pregnancy, and a compelling interest in the life of the fetus at the point of viability, or the point at which the fetus is able to live outside the mother's womb. Thus, under *Roe*, a State may regulate the abortion procedure to the extent the regulation is reasonably necessary to protect maternal health after the first trimester. During the first trimester, the decision to abort must be left to the physician in consultation with his patient, without regulation by the State. After the point of viability, or the third trimester, a State may prohibit abortion except when necessary to preserve the health of the mother. *Roe*, 410 U.S. at 163-64, 35 L. Ed. 2d at 183, 93 S. Ct. at 731-32.

After *Webster*, the preamble of a Missouri abortion statute, similar to the preamble of the Illinois Abortion Law (Ill. Rev. Stat. 1991, ch. 38, par. 81—21), remained valid as a majority of the Court declined to address its constitutionality. (*Webster*, 492 U.S. at 507, 106 L. Ed. 2d at 428, 109 S. Ct. at 3050 (Rehnquist, C.J., joined by White, O'Connor, Scalia, and Kennedy, JJ.).) A majority of the Court emphasized that *Roe v. Wade* " 'implies no limitation on the authority of a State to make a value judgment favoring childbirth over abortion.' " (*Webster*, 492 U.S. at 506, 106 L. Ed. 2d at 427-28, 109 S. Ct. at 3050, quoting *Maher v. Roe* (1977), 432 U.S. 464, 474, 53 L. Ed. 2d 484, 494, 97 S. Ct. 2376, 2382-83.) The Court further stated in *dictum* that the language of Missouri's preamble, declaring that "[t]he life of each human being begins at conception" and that "[u]nborn children have protectable interests in life, health, and well-being" (Mo. Rev. Stat. §§1.205.1(1), (2) (1986)) could be interpreted as offering protections to

unborn children in tort and probate law, and nothing more. *Webster*, 492 U.S. at 506, 106 L. Ed. 2d at 428, 109 S. Ct. at 3050.

In upholding the portion of the Missouri statute which restricted public employees from using public facilities to perform nontherapeutic abortions, a majority of the *Webster* Court reiterated its position that a State may favor childbirth over abortion. Utilizing the analysis of *Harris v. McRae* (1980), 448 U.S. 297, 65 L. Ed. 2d 784, 100 S. Ct. 2671, *Maher v. Roe* (1977), 432 U.S. 464, 53 L. Ed. 2d 484, 97 S. Ct. 2376, and *Poelker v. Doe* (1977), 432 U.S. 519, 53 L. Ed. 2d 528, 97 S. Ct. 2391, a majority of the *Webster* Court found that "[n]othing in the Constitution requires States to enter or remain in the business of performing abortions." (*Webster*, 492 U.S. at 510-11, 106 L. Ed. 2d at 430-31, 109 S. Ct. at 3052-53 (Rehnquist, C.J., joined by White, O'Connor, Scalia, and Kennedy, JJ.).) According to the *Webster* Court, "Missouri's refusal to allow public employees to perform abortions in public hospitals leaves a pregnant woman with the same choices as if the State had chosen not to operate any public hospitals at all." *Webster*, 492 U.S. at 510, 106 L. Ed. 2d at 430, 109 S. Ct. at 3052.

The greatest controversy in *Webster* concerned a portion of the Missouri statute which requires a physician to perform tests to determine viability prior to performing abortions on women 20 weeks or more gestational age. Although a majority of the justices voted to uphold this provision as constitutional, they disagree on the proper rationale. The plurality voted to uphold this provision on the basis that it permissibly furthers the State's interest in protecting potential human life. (*Webster*, 492 U.S. at 519, 106 L. Ed. 2d at 436, 109 S. Ct. at 3057 (Rehnquist, C.J., joined by White and Kennedy, JJ.).) In *dictum*, the plurality inferred that the rigid trimester framework of *Roe v. Wade* should be abandoned by labeling the analysis " 'unsound in principle and unworkable in practice,' " making constitutional law in the area of abortion regulation a "virtual Procrustean bed." (*Webster*, 492 U.S. at 519, 106 L. Ed. 2d at 435-36, 109 S. Ct. at 3056, quoting *Garcia v. San Antonio Metropolitan Transit Authority* (1985), 469 U.S. 528, 546, 83 L. Ed. 2d 1016, 1031, 105 S. Ct. 1005, 1015.) However, the three-member plurality emphasized that it was not necessary to revisit the holding of *Roe*, which involved a criminal abortion statute. (*Webster*, 492 U.S. at 521, 106 L. Ed. 2d at 438, 109 S. Ct. at 3058.) Thus, after *Webster*, the holding of *Roe* was left intact, as a majority of the Court decided to reaffirm or declined to address the constitutional validity of the central holding of *Roe*. See *Webster*, 492 U.S. at 521, 106 L. Ed. 2d at 438, 109 S. Ct. at 3058 (Rehnquist, C.J.,

joined by White and Kennedy, JJ.); 492 U.S. at 525, 106 L. Ed. 2d at 440-41, 109 S. Ct. at 3060-61 (O'Connor, J., concurring in part and concurring in judgment); 492 U.S. at 539-52, 560-63, 106 L. Ed. 2d at 449-58, 463-65, 109 S. Ct. at 3067-75, 3079-81 (Blackmun, J., joined by Brennan and Marshall, JJ., concurring in part and dissenting in part); and 492 U.S. at 561-63, 106 L. Ed. 2d at 464-65, 109 S. Ct. at 3079-81 (Stevens, J., concurring in part and dissenting in part).

In *Casey* (505 U.S. at ___, 120 L. Ed. 2d at 693, 112 S. Ct. at 2803), the Supreme Court stated that "[l]iberty finds no refuge in a jurisprudence of doubt" and ventured to delineate the boundaries of liberty set forth by *Roe* and *Webster*. A three-member plurality abandoned *Roe*'s trimester framework as an unnecessary and "rigid prohibition on all previability regulation aimed at the protection of fetal life." (*Casey*, 505 U.S. at ___, 120 L. Ed. 2d at 712, 112 S. Ct. at 2818.) Because of the substantial State interest in potential life throughout pregnancy and a woman's constitutionally protected liberty as recognized by *Roe*, the plurality determined that State regulation of abortion would be invalidated if it imposes an undue burden on the essential right guaranteed by *Roe*. According to the plurality, an undue burden exists if the State regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus. (*Casey*, 505 U.S. at ___, 120 L. Ed. 2d at 714-15, 112 S. Ct. at 2820.) Nevertheless, the three-member plurality, joined by Justices Stevens and Blackmun to form the majority, reaffirmed the essential holding of *Roe*, recognizing (1) the woman's right to choose to have an abortion before the point of viability without undue interference from the State; (2) the State's power to restrict abortion after fetal viability if the law contains exceptions for pregnancies which endanger a woman's life or health; and (3) the State's legitimate interest from the time of conception to protect the health of the woman and the life of the unborn fetus. *Casey*, 505 U.S. at ___, 120 L. Ed. 2d at 694, 112 S. Ct. at 2804.

Although the justices disagree on the appropriate standard to be employed in assessing the constitutionality of State abortion statutes, after both *Webster* and *Casey*, a majority of the Supreme Court agrees that the central holding of *Roe*, which allows a woman to make the ultimate decision to terminate her pregnancy before viability, has not been altered. (*Casey*, 505 U.S. at ___, 120 L. Ed. 2d at 694, 112 S. Ct. at 2804.) A majority of the Supreme Court agrees that "[w]henever it may occur, the attainment of viability may continue to serve as the critical fact, just as it has done since *Roe* was decided; which is to say that no change in *Roe*'s factual underpinning has left

its central holding obsolete, and none supports an argument for over-ruling it." *Casey*, 505 U.S. at ____, 120 L. Ed. 2d at 703-04, 112 S. Ct. at 2811-12.

The precise point of viability has not been determined as a matter of law. The Supreme Court has stated that "[t]he time when viability is achieved may vary with each pregnancy, and the determination of whether a particular fetus is viable is, and must be, a matter for the judgment of the responsible attending physician." (*Planned Parenthood v. Danforth* (1976), 428 U.S. 52, 64, 49 L. Ed. 2d 788, 802, 96 S. Ct. 2831, 2839; see also *Colautti v. Franklin* (1979), 439 U.S. 379, 388-89, 58 L. Ed. 2d 596, 605, 99 S. Ct. 675, 681-82.) In *Webster*, however, the plurality and Justice O'Connor interpreted a statute requiring physicians to perform tests to determine the point of viability prior to performing an abortion on a woman with an estimated gestational age of greater than 20 weeks as creating a presumption of viability at 20 weeks. (*Webster*, 492 U.S. at 515, 106 L. Ed. 2d at 434, 109 S. Ct. at 3055; 492 U.S. at 526, 106 L. Ed. 2d at 441, 109 S. Ct. at 3061 (O'Connor, J., concurring in part and concurring in the judgment).) In support of preserving the viability standard of *Roe*, Justice Blackmun, joined by Justices Brennan and Marshall, states in his partial concurrence and partial dissent from *Webster* that viability occurs no earlier than 23 weeks. (*Webster*, 492 U.S. at 553-54, 106 L. Ed. 2d. at 459, 109 S. Ct. at 3075.) Blackmun opined that prior to that time the crucial organs are not sufficiently mature to provide the mutually sustaining functions that are prerequisite to extrauterine survival. There is no existing technology, nor does the medical community foresee future technological advancements, which bridge the developmental gap between the three-day embryo culture and the 24th week of gestation. *Webster*, 492 U.S. at 553-54 n.9, 106 L. Ed. 2d at 459 n.9, 109 S. Ct. at 3075-76 n.9.

■ Defendants in this case do not contend that Concord West performs abortions after the point of viability. They agree that abortions at Concord West are confined to the period up to 12 weeks gestation. There is neither evidence nor argument that abortions are being performed at Concord West after the point of viability. Therefore, we determine that the activities performed at Concord West are constitutionally protected legal abortions, as announced in *Roe*, and reaffirmed in *Webster* and *Casey*.

The Illinois Appellate Court previously held that the defense of necessity is not applicable to the criminal trespass of an abortion clinic under *Roe v. Wade*. (See *Krizka*, 92 Ill. App. 3d at 290-91; *Stiso*, 93 Ill. App. 3d at 103-04; *Smith*, 161 Ill. App. 3d at 215-17.)

More recently, the Appellate Court, Third District, held that the defense remains unavailable after both *Webster* and *Casey*. (*People v. Smith* (1992), 237 Ill. App. 3d 901, 910.) Because the present law allows abortion prior to the point of viability, subject to State regulation, we find that the rationale of the courts in *Krizka, Stiso*, and *Smith* remains applicable concerning the availability of the defense of necessity to the criminal trespass of an abortion clinic. As stated in *Smith* (161 Ill. App. 3d at 215), the defense of necessity is not available to trespasses that interfere with constitutional rights. The abortions performed at Concord West were confined to the period up to 12 weeks gestation. No evidence was presented that the fetus is viable at this point. Thus, the abortions performed at Concord West were constitutionally protected. Consequently, the defense of necessity is unavailable to defendants as a matter of law. Accordingly, we find the trial court's decision to grant the State's motion *in limine*, which barred defendants from introducing evidence in support of the necessity defense, was not an abuse of discretion.

Defendants also contend that the trial court violated their sixth amendment right to a trial by jury (U.S. Const., amend. VI) and due process clause of the fourteenth amendment (U.S. Const., amend. XIV). By granting the State's motion *in limine* and precluding the defense from submitting the defense of necessity to the jury, defendants contend that the State unconstitutionally avoided the burden to prove its case beyond a reasonable doubt.

In their brief, defendants rely heavily on *Cheek v. United States* (1991), 498 U.S. 197, 112 L. Ed. 2d 617, 111 S. Ct. 604, where the Supreme Court held that a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates the mental state of willfulness whether the claimed belief or misunderstanding is objectively reasonable. *Cheek* mandated that the jury be permitted to hear evidence of the defendant's subjective understanding of the Federal tax statute for the violation of which he was prosecuted because "forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision." (*Cheek*, 498 U.S. at 203, 112 L. Ed. 2d at 630-31, 111 S. Ct. at 611.) On this basis, defendants contend that trespass is a specific intent crime and their subjective belief that trespass was necessary to prevent human life from destruction via abortion is germane to the question of whether they intentionally trespassed.

Defendants were convicted of violating the following criminal trespass statute:

"Whoever enters upon the land or a building, other than a residence, or any part thereof of another, after receiving, prior to such entry, notice from the owner or occupant that such entry is forbidden, or remains upon the land or in a building, other than a residence, of another after receiving notice from the owner or occupant to depart, commits a Class C misdemeanor." (Ill. Rev. Stat. 1991, ch. 38, par. 21—3(a).)

Unlike the statute which the defendant in *Cheek* was prosecuted for violating, the criminal trespass statute which defendants were convicted of violating does not require the mental state of wilfulness. Rather, it requires knowledge that one has illegally entered or remained on private property. In the present case, defendants illegally entered and remained on Concord West property after receiving notification that they were trespassing. Moreover, defendants admitted that they were trespassing, but asserted that a trespass was necessary to prevent the termination of fetuses via abortion. *Cheek* is not applicable to the facts of this case as defendants did not have a good-faith misunderstanding of the law of trespass. Any misunderstanding related to the applicability of the affirmative defense of necessity based upon the Supreme Court cases of *Webster* and *Casey*.

A defendant is entitled to an instruction "as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." (*Mathews v. United States* (1988), 485 U.S. 58, 63, 99 L. Ed. 2d 54, 61, 108 S. Ct. 883, 887.) The defendant is entitled to the benefit of any defense shown by the entire evidence (*Janik*, 127 Ill. 2d at 398), and even the slightest evidence introduced in support of the defendant's affirmative defense warrants an instruction. (*People v. Everette* (1990), 141 Ill. 2d 147, 156; see also Ill. Rev. Stat. 1991, ch. 38, par. 3—2(a) (the defense must present "some evidence" in support of its affirmative defense).) However, an instruction is not warranted if the evidence before the trial court is so clear and convincing that the court finds the affirmative defense is unavailable as a matter of law. *People v. Larry* (1986), 144 Ill. App. 3d 669, 676.

We previously determined that the defense of necessity was not available to defendants as a matter of law. Therefore, no denial of due process occurred when the trial court granted the State's motion *in limine* and excluded all evidence in support of the defense of necessity. See *Krizka*, 92 Ill. App. 3d at 291 (no denial of due process by the exclusion of evidence that life begins at conception).

Subsequent to oral argument in this case, the United States Supreme Court filed an opinion in *Bray v. Alexandria Women's Health*

*Clinic* (1993), 506 U.S ____, 122 L. Ed. 2d 34, 113 S. Ct. 753, addressing the issue of whether the Civil Rights Act of 1871 (42 U.S.C. §1985(3) (1988)) provides a Federal cause of action against persons obstructing access to abortion clinics. We have reviewed this decision, and it does not alter our opinion in this case.

For the foregoing reasons, we affirm the judgments of the circuit court of Du Page County.

Affirmed.

INGLIS, P.J., and BOWMAN, J., concur.