**Robert JUDGE, Richard Defouw, Eric Sammons, and Michael Schmedicke, Appellants–Defendants,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–9402–CR–52.

Court of Appeals of Indiana.

Dec. 18, 1995.

Rehearing Denied March 13, 1996.

Bruce Carr, Robert J. Henke, Carr & Henke, Lake Station, for appellants.

Pamela Carter, Attorney General, Janet L. Parsanko, Geoff Davis, Deputy Attorneys General, Indianapolis, for appellee.

## OPINION

HOFFMAN, Judge.

■ Appellants-defendants Robert Judge, Richard Defouw, Eric Sammons, and Michael Schmedicke (collectively "defendants") appeal their convictions for obstructing pedestrian traffic, Class B misdemeanors, and criminal trespass, Class A misdemeanors. The facts relevant to appeal are summarized below.

On the morning of March 20, 1993, employees of the Merrillville, Indiana Planned Parenthood Clinic[1] (Clinic) arrived at work to find a group of individuals blocking the doors and walking around the Clinic. According to them, they were attempting to educate Clinic patients regarding the dangers surrounding abortion procedures and to stop any abortions which may have been scheduled that day. As a result of their efforts, both employees and patients were denied access to the building. The Clinic did not open.

Soon thereafter, police were summoned to the scene. Upon arrival, police discovered approximately 200 individuals in front of the Clinic. A number of individuals were also blocking the Clinic doors. Over a public address (PA) system the group was generally instructed and those blocking the doors were personally instructed, that the Clinic was located on private property, they were trespassing, and if they did not leave the premises immediately, they would be arrested. No one left.

The police then arrested those persons blocking the doors to the Clinic. During arrest, some individuals stood when police approached. Some were shackled to concrete and steel devices. Others kneeled, sat down, passed out literature, or made themselves limp while police attempted to handcuff and carry them to police and fire vehicles.

In total, 27 individuals were tried for events occurring at the Clinics. The defendants were among those convicted of obstructing pedestrian traffic and criminal trespass. For purposes of sentencing, the 27

individuals were placed in three groups: A, B, and C. Defendants were placed in Group A. As such, the trial court sentenced them each to one year imprisonment and a $5,000.00 fine for their criminal trespass convictions. For their convictions for obstructing pedestrian traffic, the trial court sentenced them to a 180-day jail term and a $500.00 fine. The sentences, which were to be served consecutive to one another, were suspended. The trial court also placed defendants on a two-year probationary term; ordered them to perform 500 hours of community service at a local hospital or care center; and as part of an eight-hour community service project, ordered them to attend a reproductive health lecture sponsored by Planned Parenthood. Pursuant to the order, and without a provision for good credit against the original sentence, any defendant refusing to attend the eight-hour lecture was required to spend a day in jail for each hour of the lecture missed. Defendants appeal their convictions.

On appeal, they raise several issues which we consolidate into five:

(1) whether the trial court erred in excluding certain evidence and an instruction on the defense of necessity;

(2) whether the trial court erred in conducting an *ex parte* communication with the prosecution;

(3) whether the trial court erred in sentencing;

(4) whether the trial court erred in ruling on certain discovery matters; and

(5) whether the trial court violated their constitutional rights by imposing the lecture requirement.

■ Defendants contend the trial court erred in excluding certain evidence and a jury instruction supporting a necessity defense. As they point out, this defense is available in Indiana. *See Toops v. State* (1994), Ind.App., 643 N.E.2d 387, 388–389 (elements necessary for instruction on necessity). It is also true that a defendant is entitled to any defense which is founded in

---

1. Events relevant to this appeal also occurred at the Planned Parenthood Clinic in Gary, Indiana on March 18, 1993.

the evidence. *Smith v. State* (1989), Ind., 547 N.E.2d 817, 820. However, a trial court is not obligated to admit evidence or instruct a jury on a theory which has no legal relevance to facts of the case. *See Wielgus v. Lopez* (1988), Ind.App., 525 N.E.2d 1272, 1274.

■ Defendants cite, among other authorities, numerous scientific, political, and legal treatises which discuss the ramifications of abortion. Yet, a lengthy discussion on the moral, ethical, psychological, physiological or political implications of the practice is unnecessary at this time. Debate regarding abortion is shrouded in controversy. It also goes without saying the choice of a woman to seek an abortion is a topic upon which "[m]en and women of good conscience can disagree." *Planned Parenthood v. Casey* (1992), 505 U.S. 833, 850, 112 S.Ct. 2791, 2806, 120 L.Ed.2d 674, 697. Nonetheless, subject to state regulation, abortion is a medical procedure which the American legal system deems not only lawful but a protected privacy right of constitutional dimension. *See Roe v. Wade* (1973), 410 U.S. 113, 164, 93 S.Ct. 705, 732, 35 L.Ed.2d 147, 183; *Casey,* 505 U.S. at 851, 112 S.Ct. at 2807, 120 L.Ed.2d at 699; *Conn v. Conn* (1988), Ind.App., 525 N.E.2d 612, 615, *aff'd* 526 N.E.2d 958 (Indiana law recognizes right of abortion in first trimester of pregnancy); IND.CODE § 16–34–2–1, *et seq.* (1993 Ed.) (regulations surrounding abortion procedures); 18 U.S.C. § 248 (Federal Access to Clinic Entrances Act).[2]

■ The Constitution does not act as a sanctuary for those who engage in criminal acts solely to derogate the constitutional rights of others. There is no evidence to suggest any abortions which may have been scheduled at the Clinic were illegal.[3] As the Court in *U.S. v. Turner,* (10th Cir.1995), 44 F.3d 900, 903, aptly stated while discussing circumstances similar to those presented here,

"To allow the defense of necessity ... here would not only be a recipe for disaster, but would call into question the very foundations of civil society and constitutional democracy.

'To allow the personal, ethical, moral, or religious beliefs of a person, no matter how sincere or well-intended, as a justification for criminal activity aimed at preventing a law-abiding citizen from exercising her legal and constitutional rights would not only lead to chaos but would be tantamount to sanctioning anarchy.' "

(Citations omitted.). Thus, as a matter of law, the defense of necessity is unavailable to justify or excuse defendants' criminal actions under the circumstances of this case. *See People v. Berquist* (1993), 239 Ill.App.3d 906, 181 Ill.Dec. 738, 744, 608 N.E.2d 1212, 1218 (as a matter of law necessity defense unavailable to trespassers who interfere with consti-

2. In order to deter the type of criminal conduct engaged in by individuals in the present case, in 1994, Congress enacted the "Freedom of Access to Clinic Entrances" Act (FACE). Its purpose being the protection of those seeking the service of reproductive health facilities and religious institutions, FACE, in pertinent part, provides for civil and criminal penalties to be imposed on any one who:

  "(1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services; or

  \*   \*   \*   \*   \*   \*

  (3) intentionally damages or destroys the property of a facility, or attempts to do so, because such facility provides reproductive health services...."

18 U.S.C. § 248(a)(1) and (3). Pursuant to FACE, penalties are exacted depending upon both the severity and frequency of violations. For instance, a first time offender may be confronted with a fine. Also, he or she may be imprisoned for a term not to exceed one year. For a subsequent offense, a fine of $25,000.00 may be assessed. If bodily injury results from conduct prohibited by the act, a term of 10 years' imprisonment may be imposed. Alternatively, if death results, an offender may be imprisoned for life. *See* 18 U.S.C. § 248(b), (c). In addition to criminal penalties, civil remedies are available to "any aggrieved person" under the act. *See* 18 U.S.C. § 248(c).

3. Being legal, defendants have also not shown any abortions which may have been scheduled were a "significant evil" supporting a jury instruction on the defense of necessity under elements required in Indiana. *Toops,* 643 N.E.2d at 390.

tutional right of regulated abortion); *Egger v. State* (Tex.App.—El Paso 1991) 817 S.W.2d 183, 186 (necessity defense not available to excuse crimes of trespass and obstructing passageway committed by abortion protestors as "harm" contemplated by defense may not be used to derogate rights of others as prescribed by decisions of Supreme Court which are *stare decisis* ).[4]

■ Upon being convicted, defendants were informed by the trial court that it intended on having them attend a lecture sponsored by Planned Parenthood at the Clinic. The lecture was expected to educate them as to the wide range of services, beyond abortion procedures, offered by family planning facilities such as Planned Parenthood. In the interim between conviction and sentencing, a discussion took place between the trial court and Planned Parenthood regarding defendants' attendance at the lecture. Because they were not present, defendants argue their right to an impartial judge was compromised by this discussion.

■ In order to gain reversal on the basis of an *ex parte* communication, the defendants must show prejudice resulted from the communication. *Moffatt v. State* (1989), Ind., 542 N.E.2d 971, 974. The focus is not on its substance but rather the impact the communication had upon the impartiality of the trial judge. *Austin v. State* (1988), Ind. App., 528 N.E.2d 792, 794. In our review, unless evidence suggests otherwise, we assume the judge would have disqualified himself had his impartiality been reasonably called into question. *Id.*

The trial court acknowledged the conversation in open court during sentencing on October 12, 1993. At that time, the trial court explained to defendants the discussion dealt merely with the lecture format and Planned Parenthood's objections to defendants presence in the Clinic. The prosecution had remained silent throughout the conversation. Having already been convicted, and the trial court having previously committed itself to

the lecture requirement, defendants have failed to show how they were prejudiced by the communication.

■ In related issues, but without cogent argument or citation to authority, defendants also allege their rights to effective assistance of counsel and fundamental fairness in the proceedings were compromised by this communication. The issues are waived. *See* Ind.Appellate Rule 8.3(A)(7) (each issue on appeal must be supported by sufficient facts, citation to authority and cogent argument).

■ Next, defendants raise various arguments relating to the trial court's restitution order. As a condition of probation, the trial court may require a person to,

"(5) [m]ake restitution ... to the victim of the crime for damage or injury that was sustained by the victim. When restitution ... is a condition of probation, *the court shall fix the amount, which may not exceed an amount the person can or will be able to pay....*"

IND.CODE § 35–38–2–2.3(a)(5) (1993 Ed.) (Emphasis added.). This language implies that restitution must reflect "actual loss" to the victim. *Batarseh v. State* (1993), Ind. App., 622 N.E.2d 192, 196, *trans. denied.* The statutory language also instructs that restitution may not exceed the amount a defendant is able to pay. Beyond this, however, the statute itself offers the trial court no guidance on how to make these determinations.

■ Relying on *Batarseh*, defendants argue "actual loss" must reflect the amount of damage caused by each defendant individually. Their reliance on this case is misplaced. *Batarseh* merely holds the amount of "actual loss" to the victim is a factual determination which must be supported by the evidence. *Id.* In *Batarseh*, the restitution ordered was deemed improper because of the possibility that the losses alleged by the victim were attributable not only to defendants' criminal actions, but to other causes as well. *Id.*

**4.** *Accord State v. Burkemper* (Mo.App.1994), 882 S.W.2d 193, 199; *State v. Cozzens* (1992), 241 Neb. 565, 490 N.W.2d 184, 192; *State v. Thomas* (1991), 103 N.C.App. 264, 405 S.E.2d 214, 216; *State v. Sahr* (N.D.1991), 470 N.W.2d 185, 192; *City of Kettering v. Berry* (1990), 57 Ohio App.3d 66, 567 N.E.2d 316, 320; *Com v. Wall* (1988), 372 Pa.Super. 534, 539 A.2d 1325; *Cleveland v. Municipality of Anchorage* (Alaska 1981), 631 P.2d 1073, 1080.

*Batarseh* neither addresses nor lends support to defendants' proposition that where more than one defendant is involved in concerted criminal action, an individual determination must be made for damage caused by each particular defendant. Indeed, a defendant may be held criminally liable and sentenced for the acts of his or her partners in crime. IND.CODE § 35–41–2–4 (1993 Ed.) Here, 27 defendants acted together to cause damage to the victims. The trial court did not act unreasonably in requiring them to share the cost of their concerted damage.

■ In a related argument, defendants contend the trial court erred in having them pay for an upgraded security system at the Clinic. However, they offer no evidence to show such a system was an unnecessary replacement. *See* IND.CODE § 35–50–5–3(a) (1993 Ed.) (restitution may reflect actual loss of repair or replacement if repair is inappropriate).

■ Next, the inquiry requirement of IND.CODE § 35–38–2–2.3 ensures that a poor defendant will not be imprisoned, where a wealthy one would be spared this fate merely because the price of restitution is too high. *See Sales v. State* (1984), Ind.App., 464 N.E.2d 1336, 1340 (inquiry requirement of restitution statute ensures against equal protection violation). At the hearing, defense counsel informed the trial court he believed some of his clients were indigent. In response, the trial court stated that it would not incarcerate any indigent individual for failure to pay his or her pro-rated restitution share. In doing so, however, the trial court merely asked that any defendant seeking to show indigency submit financial records, tax returns, pay stubs, and any other relevant information to assist it in making such individual determinations.

This request was repeated several times throughout sentencing. Concurrent with these requests, defense counsel complained of the difficulty of compiling extensive financial records of so many individuals. Further, citing issues of "judicial economy," defense counsel urged the trial court to forego this determination until the appellate court decided upon the appropriateness of restitution in the first instance. Paradoxically, while ignoring the trial court's repeated requests above, defendants now argue on appeal the trial court failed to fulfill its duty to inquire into their individual abilities to pay restitution. We disagree.

As noted above, the trial court made repeated attempts, albeit unsuccessfully, to garner financial information from the individuals seeking to establish their indigency. Defendants cannot in one instance thwart the trial court's attempt to meet its obligation under IND.CODE § 35–38–2–2.3 by failing to submit their own financial data for its review, and then expect to be successful on appeal by claiming as a ground for reversal its failure to meet its obligations under the statute.

■ Defendants' contention that the trial court improperly ordered restitution be paid to the police and fire departments is likewise meritless. A state entity may be considered a "victim" for the purposes of payment of restitution under IND.CODE § 35–38–2–2.3 (1993 Ed.). *See Kingston v. State* (1985), Ind.App., 479 N.E.2d 1356, 1359, *trans. denied* (defendant may be ordered to pay restitution to state highway department).

■ Defendants argue their sentences are excessive in violation of *Smith v. State* (1993), Ind., 621 N.E.2d 325. IND.CODE § 35–50–3–1 allows a sentence for a misdemeanor to be suspended and provides that the trial court may place a probationer "on probation ... for a fixed period of not more than one (1) year" for each offense. However, the *Smith* court instructs that in sentencing on a misdemeanor conviction, a prison sentence, the imposition of probation, or any combination of the two may not exceed the maximum term for the conviction. *Id.* at 326.

■ The trial court imposed a two-year probationary term on each defendant; though combined, the maximum consecutive sentence available for these misdemeanor convictions is one year and 180 days' imprisonment. *See* IND.CODE § 35–50–3–2 (1993 Ed.) (one year maximum sentence for Class A misdemeanor); IND.CODE § 35–50–3–3 (1993 Ed.) (180–day maximum sentence for Class B misdemeanor). In addition to the

original sentences and without a provision for good credit time, the trial court also ordered each defendant spend one day in jail for each hour of the lecture missed. Accordingly, we now modify the sentences as follows: one year probationary terms are imposed upon each defendant for their criminal trespass convictions; consecutive to these terms, 180–day probationary terms are imposed upon each defendant for their obstructing pedestrian traffic convictions; and defendants shall receive good credit time against their sentences for any time spent in jail as a result of their failure to attend the lecture.

Citing to Ind.Appellate Rule 8.3(E), defendants attempt to incorporate the arguments of their remaining issues from a separate appeal.[5] No argument is provided in their brief to address these issues. App.Rule 8.3(E) does not allow for the adoption by reference of the contents of briefs from separate appeals. *See Stetzer v. State* (1995), Ind.App., 658 N.E.2d 652. Inasmuch as these remaining issues fail to offer cogent argument, they are waived. *See* App.R. 8.3(A)(7). Affirmed in part and modified in part.

GARRARD and RUCKER, JJ., concur.

---

**5.** Defendants were among 27 individuals with related appeals pending before this Court. To accommodate the 27 defendants, the cases were originally consolidated into six separate appeals. This number was chosen because defense counsel assured this Court that different issues existed in each of the six cases.