NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241290-U

NO. 4-24-1290

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 14, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Rock Island County |
| ADRIAN WARREN NEELEY, | ) | No. 22CF768 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Frank R. Fuhr, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and DeArmond concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, holding (1) the trial court did not abuse its discretion
by granting the State's motion to bar defendant from presenting the affirmative
defense of necessity and (2) defendant has not established that his counsel
provided ineffective assistance for failing to preserve issues relating to the
necessity defense.

¶ 2   Defendant, Adrian Warren Neeley, appeals his conviction for aggravated fleeing

or attempting to elude a peace officer. Defendant argues the trial court abused its discretion in

"refusing to instruct the jury as to the affirmative defense of necessity where evidence supporting

the defense met the required 'very slight' evidence threshold." Defendant also argues that his

trial counsel was ineffective for failing to preserve the necessity defense issue for appeal. We

affirm.

¶ 3                                    I. BACKGROUND

¶ 4            The State charged defendant with two counts of aggravated fleeing or attempting

to elude a peace officer (625 ILCS 5/11-204.1(a)(1), (a)(4) (West 2022)). The information alleged defendant failed to stop his vehicle after having been given audible and visible signals to do so by Officer Matthew Bundy and, in fleeing or attempting to elude Bundy, traveled at a rate of speed in excess of 21 miles per hour over the legal speed limit (count I) and disobeyed two or more traffic control devices (count II).

¶ 5 On July 21, 2023, defendant filed a notice of affirmative defense, indicating that he would be claiming the affirmative defense of necessity pursuant to sections 7-13 and 7-14 of the Criminal Code of 2012 (Code) (720 ILCS 5/7-13, 7-14 (West 2022)).

¶ 6 On July 26, 2023, the State filed a motion to bar defendant from presenting the necessity defense. The State asserted that, after gunshots were heard, Officer Bundy saw defendant driving away from the scene in a vehicle that matched the description of a suspect vehicle. Bundy then directed defendant to stop by activating his lights and siren, and defendant fled from him for approximately 10 minutes, including a brief foot pursuit. The State argued the jury should not be instructed on necessity because there was no specific and immediate threat to defendant at the time he fled from the police and there were alternatives available to him other than fleeing from the police. The trial court did not address this motion on the record prior to trial.

¶ 7 The matter proceeded to a jury trial on August 23, 2023. Officer Andrew Eagle of the Rock Island Police Department testified that he was on patrol in a marked squad car on the night of the incident. Eagle received a report of a reckless driver in the area, and he observed the vehicle he believed to be the subject of the complaint. The vehicle at issue was a black sedan, which "appeared to be a Monte Carlo 2000 model." The vehicle made a "quick right-hand turn," and Eagle followed it. The vehicle then turned into an alleyway, and Eagle continued to follow

it. The vehicle turned down a "secondary alleyway," and Eagle heard gunfire coming from the area where it had turned. He observed "the muzzle flash of a firearm" through slits in a fence. He reported "shots fired" to his dispatch. He waited for a moment to see if a person or vehicle would pass him through the alleyway, but none did. He continued into the alleyway, but he was unable to find the black sedan. He gave officers in the area a description of the vehicle, and he stopped pursuing it. He did not turn on his lights or siren.

¶ 8        Officer Bundy testified that he was patrolling in a marked squad car on the night of the incident. He received a "call-out" that night from Eagle stating that shots had been fired approximately six to seven blocks away from Bundy's location, and a dark-colored Monte Carlo was seen leaving the scene of the shooting. Bundy then saw a dark blue Monte Carlo that matched the description of the subject vehicle. Bundy made a U-turn, and he activated his emergency lights. The vehicle accelerated, and Bundy then activated his audible siren. Bundy pursued the vehicle with his emergency lights and siren on. Bundy observed the vehicle drive past three stop signs and through a red stoplight without stopping. At times during the pursuit, Bundy drove over 80 miles per hour in an area where the speed limit was 30 miles per hour. The other vehicle was driving at least as fast as Bundy during that time. The vehicle eventually stopped, and the driver exited it and fled on foot. Bundy exited his squad car and pursued the driver on foot. Officers eventually apprehended the driver. Bundy identified defendant in court as the driver.

¶ 9        Video recordings from Bundy's squad car camera and body camera from that night were admitted into evidence and played for the jury. The squad car video recording showed the squad car with its lights and siren activated following a dark blue sedan at a high rate of speed for approximately eight minutes. In the video playback, the blue sedan failed to stop at

multiple red lights. When the blue sedan eventually stopped, an individual exited the driver's door and ran away from the view of the camera. Officers chased the driver and returned into view of the camera with a man in handcuffs approximately 90 seconds later.

¶ 10　　　　　The State then rested. Defendant moved for a directed verdict, and the trial court denied the motion.

¶ 11　　　　　The trial resumed the next day. Out of the jury's presence, defense counsel advised the trial court that defendant would testify. The prosecutor stated he did not believe the court had ever ruled on the State's motion to bar the affirmative defense of necessity "on the record." The court then stated: "The motion to bar the affirmative defense of necessity is granted. Based on the evidence that was produced in the State's case, there *** are no facts to support the defense of necessity in its case."

¶ 12　　　　　The State then requested that the defense "proffer what the Defendant is going to testify to based off of the affirmative defenses that have been barred already as well as the issue [the court] had with if [*sic*] firearms." (On the first day of the trial, the trial court had ruled that no evidence would be admitted concerning two guns, one which was found near the area where the shooting occurred and one which was found near the area where the pursuit ended.) Defense counsel replied: "I believe that the parameters have been established, the necessity has been barred and my client understands that describing guns is not allowed. However, Officer Eagle did describe a shooting in the vicinity and Defendant will also describe a shooting without talking about guns, shells, anything with guns." The court then stated it had ruled the parties were "not getting into" the two guns. The court stated that if defendant's testimony was similar to Officer Eagle's concerning shots fired in the neighborhood, that would be admissible.

¶ 13　　　　　Defense counsel indicated defendant would testify that he believed the shots were

fired at him, and he would describe why he thought the shots were being fired at him. The State argued that evidence concerning the mental state required for necessity was inappropriate because the necessity defense had been barred. Defense counsel replied that the testimony about why defendant thought he "needed to run" would only apply to the incident with Officer Eagle, and defendant was not alleged to have fled from Eagle. The following exchange occurred:

"THE COURT: Okay. So I don't get what we are arguing about.

MR. SANDROCK [(ASSISTANT STATE'S ATTORNEY)]: So I'm concerned that he is going to argue the reasons why he fled the scene, whatever those may be. That would not be appropriate in this sense because the affirmative defense is barred.

MS. HOFFMAN [(DEFENSE COUNSEL)]: He's not—

MR. SANDROCK: He can testify to what heard or saw, which is the shots fired, and then what happened after that transpired, but he cannot testify to why he ran.

MS. HOFFMAN: He is not accused of fleeing the scene of a crime. He's accused of fleeing Officer Bundy. This explains why he's going—

THE COURT: He can testify—

MS. HOFFMAN: Yeah, he's not—

THE COURT: He can testify to what he—He can testify. He's just not going to be—There's not going to be a jury instruction on necessity. So that's not going to be [a] defense that he can assert. Now, if he—if he testifies that he heard shots and I was getting out of there.

MS. HOFFMAN: And the shots were being fired at him.

THE COURT: But it's no defense. Okay.

MR. SANDROCK: Okay.

MS. HOFFMAN: Yeah, by the time Officer Bundy joins, the shots are no longer being fired at him.

THE COURT: Right. Okay.

MS. HOFFMAN: And we understand that affirmative defense has been denied. Officer Bundy isn't alleged to be shooting at him."

¶ 14    The trial resumed, and defendant testified that, on the night of the incident, he was driving to his children's grandmother's house with some money and items for the children. As he approached the area, shots were fired in his direction. He stated he believed the shots were being fired at him because he could see "the fire from the gun that [was] coming towards [him]." When he heard the gunshots, he "hit the brakes and went forward," hitting his head on the dashboard. Defendant stated that "everything kind of went blurry after that" and he tried to stay awake. His next memory was waking up in jail. He did not remember a police car trying to stop him. When asked, he agreed that he was the person from the video recordings that had previously been shown to the jury. He acknowledged that he had a prior felony conviction for possession of cocaine with intent to deliver.

¶ 15    The jury found defendant guilty of both counts of aggravated fleeing or attempting to elude a peace officer. The trial court subsequently sentenced him to three years' imprisonment on one count of aggravated fleeing or attempting to elude a peace officer, finding the second count merged. This appeal followed.

¶ 16                                      II. ANALYSIS

¶ 17    On appeal, defendant argues that the trial court abused its discretion in refusing to

instruct the jury as to the affirmative defense of necessity where evidence supporting the defense met the required "very slight" threshold. Defendant also argues that he received ineffective assistance of counsel where counsel failed to object when the court refused to instruct the jury on necessity, failed to proffer what the evidence of necessity would have been, and failed to preserve the issue for appeal.

¶ 18                                    A. Necessity Defense

¶ 19          We first address defendant's argument that the trial court erred by "refusing to instruct the jury as to the affirmative defense of necessity." Specifically, defendant argues that the court abused its discretion in refusing to allow defendant to raise the affirmative defense based solely on the State's evidence in its case-in-chief without giving him the opportunity to present evidence in support of the defense. Defendant also argues that, despite the court's premature ruling, there was at least slight evidence that he acted out of necessity. Specifically, defendant contends that he was not "to blame for the situation that created the necessity" (namely, the gunshots in the alleyway), and his flight from Officer Bundy was necessary to avoid a greater injury. Defendant also speculates that he may have offered additional testimony on the subject, "but the prosecution objected to any testimony that implicated the necessity defense."

¶ 20          Initially, we note that defendant has failed to properly preserve this argument for appeal by failing to include it in a posttrial motion. See *People v. Thompson*, 238 Ill. 2d 598, 611 (2010) ("To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion."). Defendant himself acknowledges in his brief that his trial counsel failed to preserve any issues for appeal by failing to file a posttrial motion. Notably, however, the State does not assert forfeiture in its brief but instead responds to the merits of defendant's claim. Because the State may forfeit a claim of forfeiture, we proceed to

address the merits of defendant's claim. See *People v. Artis*, 232 Ill. 2d 156, 178 (2009) ("[T]he rules of forfeiture in criminal proceedings are applicable to the State as well as to the defendant.").

¶ 21    Sections 7-13 and 7-14 of the Code provide that necessity is an affirmative defense to a criminal offense. 720 ILCS 5/7-13, 7-14 (West 2022). Regarding the defense of necessity, section 7-13 of the Code provides:

> "Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." *Id.* § 7-13.

¶ 22    The necessity defense "is viewed as involving the choice between two admitted evils where other optional courses of action are unavailable [citations], and the conduct chosen must promote some higher value than the value of literal compliance with the law." *People v. Janik*, 127 Ill. 2d 390, 399 (1989). For the defense to apply, "the threat of harm must be 'specific and immediate.' " *People v. Taylor*, 2023 IL App (4th) 220381, ¶ 65 (quoting *People v. Kite*, 153 Ill. 2d 40, 45 (1992)); see *People v. Guja*, 2016 IL App (1st) 140046, ¶ 47 ("The defense of necessity applies when the threat of harm was immediate and defendant's conduct was the sole option to avoid injury."). "In order to properly raise the affirmative defense of necessity, the defendant must present 'some evidence' in support of the claim." *People v. Kratovil*, 351 Ill. App. 3d 1023, 1033 (2004). "Very slight evidence upon a given theory of a case will justify the giving of an instruction." *People v. Jones*, 175 Ill. 2d 126, 132 (1997).

¶ 23    A trial court may properly grant a motion *in limine* to bar the introduction of

evidence in support of an affirmative defense when the defense is "unavailable as a matter of law." *People v. Henderson*, 223 Ill. App. 3d 131, 135 (1991). "When the trial court is faced with a motion *in limine* regarding an affirmative defense, the trial court should proceed with caution so as not to deprive a defendant of a legally viable defense." *Kratovil*, 351 Ill. App. 3d at 1033. The affirmative defense of necessity is available as a matter of law where "(1) the defendant was without blame in occasioning or developing the situation and (2) the defendant reasonably believed that her conduct was necessary to avoid a public or private injury greater than the injury that might have resulted from literal compliance with the law." *Id.*

¶ 24    "A reviewing court will not reverse the trial court's decision to grant a motion *in limine* absent an abuse of discretion." *People v. Berquist*, 239 Ill. App. 3d 906, 908 (1993). Similarly, the question of whether the trial court erred in determining that insufficient evidence existed to justify giving a jury instruction is reviewed for an abuse of discretion. *People v. McDonald*, 2016 IL 118882, ¶ 42.

¶ 25    We reject defendant's argument that "the trial court abused its discretion in not allowing [him] to raise his affirmative defense based off of the State's evidence in its case-in-chief" and failing to give him an opportunity to present evidence in support of the defense. While defendant contends that the court's ruling on necessity was premature, we note that a court may grant a motion *in limine* to bar evidence in support of an affirmative defense where the defense is unavailable as a matter of law. See *Henderson*, 223 Ill. App. 3d at 137 (holding that the court properly granted the State's motion *in limine*, filed at the close of the State's case-in-chief, seeking to bar the defendant from asserting a necessity defense or presenting evidence in support of such a defense because necessity was not a "viable" defense in that case); *Kratovil*, 351 Ill. App. 3d at 1034 (holding that the trial court did not abuse its discretion in denying defendant's

motion *in limine* to present the affirmative defense of necessity prior to trial because the defense was unavailable as a matter of law).

¶ 26        We find the trial court in the instant case did not abuse its discretion by granting the State's motion *in limine* to bar defendant's claimed affirmative defense of necessity because the defense was unavailable as a matter of law. See *Henderson*, 223 Ill. App. 3d at 135. Defendant claimed necessity based on the gunshots in the alleyway. However, defendant was not charged with fleeing the scene of the alleyway shooting, but rather, he was charged with fleeing from Officer Bundy, who encountered defendant's vehicle several blocks away from the location of the shooting. The pursuit was captured on Bundy's squad car video camera, and defense counsel acknowledged that shots were no longer being fired at defendant "by the time Officer Bundy joins." As the gunshots no longer posed a specific and immediate threat to defendant at the time that Bundy directed him to stop his vehicle, defendant could not satisfy the second element of the necessity defense—namely, that his unlawful conduct was necessary to avoid greater harm. Accordingly, the court did not abuse its discretion by determining that the necessity defense was unavailable to defendant based on the gunshots.

¶ 27        Defendant suggests that he may have been able to give additional testimony related to the necessity defense were it not for the trial court's "premature" ruling on the State's motion. However, there is no indication in the record that defendant had further evidence to present that related to the necessity defense. Notably, defendant testified that he had no memory of the incident after hitting his head, including having no memory of being pursued by a squad car. Also, contrary to defendant's argument on appeal, it is not apparent from the record that the court actually limited defendant's testimony based on its order barring the necessity defense. While the State argued that defendant should be barred from testifying as to his mental state or

his reasons for fleeing from the police, the record does not reflect that the court accepted the State's argument. To the contrary, the transcript indicates that the court agreed with defense counsel that defendant could testify that he fled because he heard gunshots and believed they were aimed at him. The court stated, however, that the jury would not be instructed on necessity based on such testimony.

¶ 28       Moreover, the parties' comments on the second day of the trial indicated that there had been a prior off-the-record discussion of (and possibly even a ruling on) the State's motion to bar the necessity defense. Defendant failed to prepare a bystander's report of any off-record proceeding concerning the State's motion to bar the necessity defense, so it is impossible to know to what extent defense counsel had previously explained the defense's theory of necessity to the trial court and to what extent the court had previously addressed the motion. See Ill. S. Ct. R. 612(b)(3) (eff. July 1, 2017); Ill. S. Ct. R. 323(c) (eff. July 1, 2017) ("If no verbatim transcript of the evidence of proceedings is obtainable the appellant may prepare a proposed report of proceedings from the best available sources, including recollection."). It is the appellant's responsibility to preserve and present a sufficient record of the asserted error, and, when the record is incomplete, the reviewing court "will indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including the presumption that the trial court ruled or acted correctly, and any doubt arising from the incompleteness of the record will be resolved against the appellant." *People v. Stewart*, 179 Ill. 2d 556, 565 (1997).

¶ 29                   B. Ineffective Assistance of Counsel

¶ 30       Defendant also argues that his trial counsel provided ineffective assistance by failing to preserve the issue of the trial court's denial of the necessity defense for appeal.

Specifically, defendant argues counsel was ineffective for failing to proffer what defendant's testimony on the necessity defense would have been had the court allowed the defense, tender a jury instruction on necessity, and file a posttrial motion.

¶ 31    A criminal defendant has the constitutional right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). See *People v. Albanese,* 104 Ill. 2d 504, 525-26 (1984). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36. That is, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694).

¶ 32    To the extent defendant is arguing that counsel was ineffective for failing to preserve a claim that that the trial court erred by barring his necessity defense (based on a claim that the evidence actually presented at trial was sufficient to support such a defense), defendant has not been prejudiced because the argument is meritless, as addressed above. As stated, the court properly granted the State's motion to bar the necessity defense.

¶ 33    To the extent defendant is arguing that his trial counsel was ineffective for failing to make an offer of proof as to what additional testimony he would have given if the necessity defense had not been barred, here again we find defendant cannot establish prejudice. Initially, as we have discussed, it does not appear that the court limited defendant from testifying as to his mental state, and it is unclear from the record whether defendant would have given any

additional testimony if he had been permitted to present the necessity defense. In any event, even assuming the court excluded testimony from defendant relating to necessity, there is no indication in the record what an offer of proof concerning such testimony would have consisted of. Consequently, we cannot determine whether it is reasonably probable that the result of the trial would have been different if counsel had made an offer of proof or if defendant had been permitted to provide additional testimony concerning necessity. See *People v. Atherton*, 406 Ill. App. 3d 598, 619 (2010) ("However, as there is no indication in the record what the offer of proof would have been, we cannot find defense counsel ineffective on this basis."); *People v. Leuthold*, 2023 IL App (4th) 220563-U, ¶ 97 ("We cannot reasonably find defense counsel to be ineffective for failing to make a formal offer of proof if the record does not show what testimony he would have elicited.").

¶ 34                                 III. CONCLUSION

¶ 35           For the reasons stated, we affirm the trial court's judgment.

¶ 36           Affirmed.